1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,           )
                                    )
          Plaintiff,                )
                                    )     CR No. 25-93
                                    )     Washington, D.C.
       vs.                          )     October 8, 2025
                                    )     1:04 p.m.
DA'JON MALLOY,                      )
                                    )
          Defendant.                )
_____)


TRANSCRIPT OF PROCEEDINGS
HEARING ON COURT'S ORAL RULING ON MOTION
BEFORE THE HONORABLE AMIT P. MEHTA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:          Caelainn Carney
                             DOJ-USAO
                             601 D Street NW
                             Ste 3.235
                             Washington, D.C. 20004
                             (202) 714-6433
                             Email:
                             caelainn.carney@usdoj.gov



For the Defendant:           Marc Jason Eisenstein
                             COBURN & GREENBAUM PLLC
                             1710 Rhode Island Avenue, NW
                             2nd Floor
                             Washington, D.C. 20036
                             (202) 470-2695
                             Email:
                             marc@coburngreenbaum.com

```
APPEARANCES CONTINUED:

Pretrial Services Officer:   Shania Fennel

Court Reporter:              William P. Zaremba
                             Registered Merit Reporter
                             Certified Realtime Reporter
                             Official Court Reporter
                             E. Barrett Prettyman CH
                             333 Constitution Avenue, NW
                             Washington, D.C. 20001
                             (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription
```

P R O C E E D I N G S

COURTROOM DEPUTY:  All rise.  This Honorable Court is now in session; the Honorable Amit P. Mehta presiding.

Your Honor, we are now on the record for Criminal Action 25-93, United States of America versus Da'Jon Malloy.

Present for the government, Caelainn Carney.

For the defendant, Marc Eisenstein.

Mr. Malloy is present in person.

THE COURT:  All right.

Good afternoon, everyone.

Mr. Malloy, good afternoon to you.

All right, everyone.  So I'm prepared to rule on the motion to suppress.

So if you'll just bear with me, I'll read the ruling into the record.

Let me just say at the outset that, as I read this into the record, I don't identify citations either to the record or to cases necessarily.  I won't say, you know, quotation marks, that kind of thing.  However, I do provide the script to our court reporter.  So the transcript itself will contain citations and quotation marks where appropriate, and then I'll also file the script itself on the docket.  So that'll be available.

All right.  So anything preliminarily before we

proceed?

MS. CARNEY:  Not from the government, Your Honor.

MR. EISENSTEIN:  The only thing -- Your Honor -- I know Your Honor requested the bags of marijuana and they were reviewed in chambers.  And just to make clear, I think it's undisputed that the larger bag was found in Mr. Malloy's pocket.

THE COURT:  Right.

MR. EISENSTEIN:  But other than that, no.

THE COURT:  Yeah.

No, I got that.

Okay.  All right.

So let me go ahead and then announce my ruling.  This will take a few minutes.  So bear with me.

So before the Court is defendant Da'jon Malloy's motion to suppress.  The Court held a hearing on the motion on August the 14th of 2025.  The government called two witnesses, Officer Timothy Ahl and Officer Matthew Allen-Garcia, and moved various exhibits into evidence.  The defense called no witnesses but moved exhibits into evidence.  The parties submitted supplemental briefs on August 27th of 2025.  Also, the Court requested to view the physical evidence, including the recovered bags of marijuana.  The government brought that evidence to chambers on October 7th of 2025, where the Court reviewed the

physical evidence outside the government's presence.

The Court's factual findings are as follows:

Officer Timothy Ahl was the government's primary witness. On March 5th of 2025, Officer Ahl first spotted Mr. Malloy on the 200 block of I Street, Northwest, believing he matched the description of a suspect broadcast by other officers.

Officer Ahl radioed in Mr. Malloy's description, but was told that Mr. Malloy could not be the suspect because the suspect was wearing a Moose Knuckles jacket, whereas Mr. Malloy was wearing a Moncler jacket.

Officer Ahl nevertheless continued to follow Mr. Malloy. He did so, Officer Ahl testified, because Mr. Malloy seemed "startled" by his presence in a marked police car, which he described as "unnatural," and because he was carrying a satchel bag, which he said, "in common terms," is used to carry narcotics and firearms in the District.

That testimony is corroborated by the radio channel communications (Def. Ex. 6 at 5:15), during which Officer Ahl can be heard saying that he was going to continue to follow Mr. Malloy because he had a satchel.

About a minute later (Def. Ex. 6 at 6:15), another officer asks whether Officer Ahl had seen any "infraction, jaywalking, anything like that." Initially Officer Ahl

responds "no," observing that Mr. Malloy was just walking on the sidewalk, but seconds later he says over the radio, "He just crossed" across -- excuse me -- "just crossed against a 'Do Not Walk' sign in the crosswalk."

Officer Ahl testified that he saw Mr. Malloy on M Street, Southeast, heading west crossing Delaware Avenue against a "Do Not Walk" sign.

Officer Ahl then proceeded to approach Mr. Malloy to stop him for jaywalking at approximately 5:01 p.m. (Gov't Ex. 3 at 17:01:35). Mr. Malloy was doing nothing suspicious. He was simply walking while enjoying an ice cream. Officer Ahl testified that this was the first time he had ever initiated a stop for jaywalking.

Officer Ahl asked him, that is, Mr. Malloy, for his license. By this time (Gov't Ex. 3 at 17:01:53), which is about at 5:01 p.m., at least three officers already had arrived on the scene, surrounding Mr. Malloy from a distance. Mr. Malloy gave Officer Ahl his name and his license and told him he was going to pick up his son from school. According to Officer Ahl, he did not detect anything in Mr. Malloy's satchel at this point.

Officer Ahl then left Mr. Malloy and went to his patrol car at 5:02 p.m. (Gov't Ex. 3 at 17:02:20), where he ran various checks against law enforcement databases. He learned that Mr. Malloy was a -- was on supervised release

status (Gov't Ex. 3 at 17:04:13).  Officer Ahl then asked another officer who was at his passenger side window, Sergeant Williams, whether he could see anything in the satchel, and the officer responded, "Not that I saw."

About a minute later, another officer, Officer Allen-Garcia, came to Officer Ahl's driver's side window and said he thinks he sees an "L" in the satchel.

Officer Ahl responded, "Go ask him.  He's stopped at this point."

Sergeant Williams can be heard saying to Mr. Malloy, "We're going to do a stop on you.  Do a pat-down." (Gov't Ex. 3 at 17:05:19).

Officer Allen-Garcia then said to another officer, "Look at his satchel, do you see a hard line?" and the other officer responded, "Yeah." (Gov't Ex. 4 at 17:05:21)

Officer Ahl continued to seek information from the databases.  Officer Ahl learned that Mr. Malloy has an "armed and dangerous" designation (Gov't Ex. 3 at 17:05:19).  Finally, Officer Ahl got out of his car at 5:06 p.m. (Gov't Ex. 3 at 17:06:06).

Meanwhile, a minute earlier at 5:05 p.m., another officer asked Mr. Malloy whether he had anything on him (Gov't Ex. 4 at 17:05:48).  Mr. Malloy responded, "Weed." Mr. Malloy then opened the satchel, and, with his left hand, pulled out a number of mylar bags.  He was then asked,

"That's all you got in there?"  Mr. Malloy responded that he had a scale.  And he added that he "can actually show you everything."  At this point, Officer Allen-Garcia was positioned to Mr. Malloy's right, and Mr. Malloy asked him whether he can put the mylar bags on the ground.  Officer Allen-Garcia said, "Up to you, if you don't mind getting it wet."  (Gov't Ex. 4 at 17:06:16)  Mr. Malloy then said he was "getting hot" and told officers he was going to take his jacket off.  He proceeded to remove his jacket and drop it onto the sidewalk, on top of the mylar bags.

Officer Ahl, in the meantime, had emerged from his car.  He went around the back of his car, where the body-worn camera shows that he can see Mr. Malloy surrounded at close distance by six officers.  Mr. Malloy's crouched over at the time, and he drops some small bags onto the sidewalk (Gov't Ex. 3 at 17:06:15).

Officer Ahl makes no movements toward Mr. Malloy at this point.  In fact, he walked instead to the passenger's side of his car to take a photo of Mr. Malloy's driver's license using his phone.  According to Officer Ahl, he took the photo at this point because he "wanted to make sure [his] hands were free" and he didn't want to "inadvertently lose Mr. Malloy's driver's license or identification should things go awry."  Notably, he did not say he took the photo because he intended to arrest

Mr. Malloy.  At no time did Officer Ahl have a citation book in his hands to write up Mr. Malloy for jaywalking.

According to Officer Ahl, he observed Mr. Malloy with what he described as a "large quantity of several mylar bags of marijuana in his hand" and drop them to the ground. He believed Mr. Malloy was in possession of an illegal quantity of marijuana and claimed that, at that point, he knew Mr. Malloy would be placed under arrest for illegal possession.  Officer Ahl said he drew that conclusion from the number of bags -- in his words, "more than 3 or 4," from the "fullness" of the bags, and the "sound as ["they"] hit the pavement," and by the way "they kind of spread apart" -- and the way "they kind of spread apart."  He added that he did not appear -- they did not appear to be empty "airbags," but were full and "would have gone over the threshold of 2 ounces," which is the maximum amount of marijuana one can lawfully possess for personal use in the District of Columbia.  He also testified that, as he was taking the photo of Mr. Malloy's license, another officer, Officer Squitieri, let him know that there was "just weed in the bag" and "he didn't see the L-shape outline anymore."  When Officer Ahl was taking the photo, his back side was facing Mr. Malloy and the other officers.

After taking the photo, Officer Ahl turned around toward Mr. Malloy and the officers.  His body cam shows

Mr. Malloy dropping his jacket on top of the mylar bags on the sidewalk.  According to Officer Ahl, this act raised his suspicion, as he perceived Mr. Malloy to be trying to "conceal the illegal quantity of marijuana."  He found it suspicious because it was an expensive coat, and it was unusual for someone to put their coat on the ground, which was wet from the rain.

On the body cam, an officer can be heard saying, "Don't put your Moncler on the ground, bro."  Mr. Malloy then bent over, and Officer Allen-Garcia, who is feet away to Mr. Malloy's right can be heard asking, "What else is in the satchel, what else is in the satchel?"  Mr. Malloy then pulled out a phone and can be heard saying that he was "hot" (Gov't Ex. 3 at 17:06:55).  Seconds later (Gov't Ex. 3 at 17:07:00), now at 5:07 p.m., Officer Ahl stepped forward and says, Stop playing games," and simultaneously grabbed the satchel from Mr. Malloy, pulling it over his head. Officer Ahl testified that he could see the butt of a gun in the satchel.  Almost simultaneously, other officer -- excuse me, other officers placed Mr. Malloy's hands behind his back.  They then moved his right arm to allow the satchel to be taken from him (Gov't Ex. 3 at 17:07:10).  Seconds later, they cuffed him (Gov't Ex. 4 at 17:07:17).

An additional search incident to the arrest revealed another mylar bag of marijuana and THC wax in

Mr. Malloy's jacket pocket.  The marijuana bags were weighed at the station house, and they came in at 8-point -- excuse me, 2.89 ounces, including the packaging.

According to Officer Ahl, the reason he approached Mr. Malloy after taking the photograph of his license was to place him under arrest for possession of marijuana.  He also testified that, based on Mr. Malloy's behavior, Officer Allen-Garcia's observation about the L-shaped bulge, and Mr. Malloy's armed and dangerous designation, he was "fairly certain" there would be a firearm in the satchel. Interestingly, Officer Allen-Garcia testified, at the time Officer Ahl grabbed the satchel, he wasn't sure whether the defendant was under arrest.

Explaining his arrest of Mr. Malloy for unlawful possession of marijuana, Officer Ahl testified, based on his training and experience, he was able to distinguish between a quantity of marijuana for personal use versus possession with intent to distribute.  He identified various factors: quantity; type of packaging, including its size and shape; and possession of a scale.  He said that when it comes to personal use of marijuana, packaging can vary from plastic cellophane baggies to mylar bags, which he described as "colorful" bags.  He was aware that mylar bags are used by legal dispensaries in the District of Columbia, but he also had seen them used in street-level sales.  He also said he

looks at the number and overall shape and size of the packaging and its consistency.  According to Officer Ahl, two of the three mylar bags was "typical" for personal use. Importantly, he added, and I'm directly quoting here, "Anything beyond that can sometimes indicate that it's" just beyond -- "that it's beyond just personal use and that we would do further investigating and look into that."

On cross-examination, Officer Ahl claimed not to know that marijuana dispensaries in the District sell bags in 3.5-gram packages.  Each package that Mr. Malloy possessed was labeled as containing "3.5 grams net weight." When confronted with individual bags seized (Def. Ex. 2), Officer Ahl acknowledged that it would take 16 3.5-gram bags to equal 2 ounces.  Though on direct, he testified that he perceived the bags collectively to be over the 2-ounce threshold, on cross, he agreed that, looking at the shape and sizes of the bags, he did not have reason to believe they contained more than 3.5 grams net weight.  But he also added that they did not appear inconsistent with hand-packed bags.

Notably, Officer Allen-Garcia testified during his direct examination that, in his experience, the mylar bags of the type in question "typically" are "coming from dispensaries."

Mr. Malloy urges suppression on various -- on a

variety of grounds.  Several, the Court disposes of quickly.

First, Mr. Malloy intimates, if not says outright, that the stop was based on his race.  Although the Court shares Mr. Malloy's concerns that the stop was pretextual, that is not a basis to suppress the evidence.  "Subjective intentions play no role in the ordinary, probable-cause Fourth Amendment analysis."  *Whren v. United States*, 517 U.S. 806, 813 (1996).  That is the lesson of the U.S. Supreme Court's decision in *Whren v. United States*, where the Court rejected inquiry into the actual motivations for a traffic stop, which the defendant in that case claimed was racially motivated.

Second, Mr. Malloy questions whether Officer Ahl, in fact, saw him jaywalk.  Mr. Malloy notes the distance between Officer Ahl and Mr. Malloy, as well as the fact that the First District police station was in the immediate area and the government failed to preserve security footage that might have shown him crossing Delaware Avenue.  The Court declines to suppress on this ground.  The Court has no evidence before it that Officer Ahl's view was obstructed at the time Mr. Malloy crossed Delaware Avenue.  Officer Ahl was only about a half block away; that is not a distance the Court deems too far to make the jaywalking observation.  The Court also notes that, although there were trees between where Officer Ahl was stationed and Delaware Avenue and

M street, it was early March and the trees had no leaves on them, as is evident from Government Exhibit 2, which is the CCTV footage.  For that reason, Defendant's Exhibit 7, which shows trees in full bloom in July of 2025 is of no moment. Further, Officer Ahl's testimony is corroborated by his contemporaneous statements recorded on the police channel that he observed Mr. Malloy jaywalking (Gov't Ex. 1). Finally, the fact of jaywalking is corroborated by the CCTV footage, which shows traffic and pedestrians moving northbound as Mr. Malloy crosses Delaware Avenue and continues to walk west.  That northbound traffic suggests that Mr. Malloy, in fact, crossed against a "Do Not Walk" sign.

Third, Mr. Malloy argues that the evidence should be suppressed because the stop was unduly prolonged.  But the time between stop and arrest was a mere six minutes. Mr. Malloy contends that Officer Ahl had no cause to search a second database after confirming his identity through a search of the first.  But Mr. Malloy cites no case for the proposition that the police must cease seeking information about an individual seized -- about a seized individual's background upon confirming the person's identity, even if stopped only for jaywalking.  The case at hand shows why such a limitation would make -- would not make sense. Officer Ahl learned additional information about Mr. Malloy

by searching the second database, namely, that he had an "armed and dangerous" designation.  That is relevant information for officers to have when a person is seized.

The Court now gets to the heart of the matter, which is whether the facts and circumstances within the "arresting officer's knowledge and of which they had reasonably trustworthy information" were sufficient to cause a reasonable officer to believe there was probable cause that Mr. Malloy had committed the offense of illegal possession of more than 2 ounces of marijuana.  See *Draper v. United States*, 358 U.S. 307, 313 (1959).

"Probable cause is more than bare suspicion, but is less than beyond a reasonable doubt and, indeed, is less than a preponderance of the evidence."  All that is required is a "fair probability" on which reasonable and prudent people, not legal technicians, act.  *Florida v. Harris*, 568 U.S. 237, 244 (2013).

The existence of probable cause depends on the "reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest," *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004), and is based on "the totality of the circumstances," *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018).  Ultimately, what is required is a "substantial chance of criminal activity."  *Lin v. District of Columbia*, 47 F.4th 828, 840 (D.C. Cir. 2022)

(quoting *Wesby*, 583 U.S. at 57).

Here's what Officer Ahl had within his knowledge at the time of arrest, according to his testimony.

One, Mr. Malloy seemed stunned by his presence and had a satchel that Officer Ahl claims people in the District use to carry guns and drugs;

Two, Mr. Malloy had jaywalked;

Three, had, in Officer Ahl's words, pulled "more than 3 or 4" mylar bags from his satchel;

Four, the bags appeared "full" and, when they hit the ground, they made a sound and kind of spread apart;

Five, at least one officer suspected Mr. Malloy might have a gun in the satchel;

And, six, Mr. Malloy had placed the mylar bags on the ground and covered them with his jacket.

In addition, even though Officer Ahl himself did not have this knowledge at the time of the arrest, the Court must account for the fact that the other officers heard Mr. Malloy admit he had "weed" and a "scale."

Considering the totality of these circumstances, the Court concludes that a reasonable officer would not have concluded that there was a substantial chance that Mr. Malloy had committed the crime of possessing more than 2 ounces of marijuana.  That is the only crime for which the government claims the officers had probable cause to arrest.

Gov't's Opp'n to Def.'s Mot. to Supress, ECF Number 22, at 19 (arguing that the facts known to Officer Ahl led him "to believe that there was probable cause to arrest Malloy for unlawful possession of marijuana").

Let's start with what is uncontroverted legally. Under District of Columbia law, the possession of up to 2 ounces of marijuana is lawful. D.C. Code Sections 48-904.01(a)(1)(A). Thus, officers not only had to have probable cause to believe Mr. Malloy possessed marijuana, but also that there was a "substantial chance" that Mr. Malloy possessed more than 2 ounces.

Officer Ahl testified that he observed "more than two or three mylar bags" in Mr. Malloy's possession. Importantly, he also said that, "although it varies, typically in a personal-use-possession type scenario, two or three, if we're talking about mylar bags, is typical. It's common. Anything beyond that can sometimes indicate that it's beyond just personal use and that we would do further investigating and look into that." So the number of mylar bags that Officer Ahl observed, in his own words, warranted "further investigating."

Neither Officer Ahl nor any other officer conducted any additional investigation before physically seizing Mr. Malloy. For instance, an officer could have picked up and inspected any one of the bags that Mr. Malloy

had placed on the ground.  Had they done so, they would have learned that each bag is labeled as containing 3.5 grams of marijuana and that the bags, as the Court knows from its own review, are light and appear and feel packed -- excuse me, are light and appear and feel packed with only small amounts of marijuana.

The types of bags, mylar bags, does not itself reasonably raise a suspicion of criminality.  Officer Ahl acknowledged that lawful dispensaries in the District of Columbia use mylar bags, though he said they're also used for street -- used by street-level dealers.  And as noted before, Officer Allen-Garcia testified that the type of bag here actually would not raise suspicion of criminal conduct. He testified, credibly in my estimation, that "typically when it's packaged like this, it's coming from dispensaries. We don't know where, which dispensaries, we have multiple across the District, but it typically indicates that it was purchased from a dispensary."

Officer Ahl's additional testimony about the perceived fulsomeness of the bags and their sound does not move the dial toward a greater probability of an arrestable quantity of marijuana.  In fact, the Court finds that Officer Ahl's testimony about what he observed on the scene about the weight of the bags is not consistent with the physical evidence.  He testified on direct that part of the

reason he believed the small number of bags could contain more than 2 ounces was because of their "fullness." In addition to being presented in open court, the mylar bags were personally inspected by the Court.  A reasonable observer of those bags would not describe them as fulsomely packed.  Just from their outward appearance, the Court could see that the individual bags were not bulging in any manner that would suggest they were stuffed with a higher quantity of marijuana.  Even Officer Ahl had to admit when confronted with the bags that they did not appear to contain more than 3.5 grams of marijuana.

Math is also important here.  It takes 16 3.5 grams (net weight) bags to equal 2 ounces.  So a person would have to possess 17 3.5-gram bags to exceed the legal limit in the District of Columbia.  If Officer Ahl had testified that he saw eight bags, the average weight of each bag would have to have been 7 grams, more than twice what the label indicates.  If Officer Ahl had testified that he saw six bags, the average weight of each bag would have had to exceed 9.3 grams, or almost three times more than what the label indicates.

The Court is not being hyper-technical here.  The weight of the marijuana matters.  In fact, it is the critical factor that makes the possession of marijuana a criminal offense, and a reasonable officer would know that

mylar bags containing 3.5 grams (net weight) of marijuana are sold at dispensaries and that the quantity of the bags first held by Mr. Malloy and then placed on the ground was not enough to exceed the lawful amount.

To be sure, packaging of marijuana in mylar bags is not limited to just lawful packaging at dispensaries. But that isn't the point.  The point is that a reasonable officer would know that the quantity of that size bag likely would not contain enough marijuana to exceed 2 ounces. Officer Ahl's testimony to the contrary is not supported by the actual appearance of the mylar bags and basic math.

The station-house weight of the evidence seized, that is, 2.89 ounces, does not add to the probable cause calculus.  See Def.'s Mot., ECF Number 19, Ex. 1, ECF Number 19-1.  That was the weight of the eight bags in total seized from Mr. Malloy without deducting the weight of the packaging.  There was no evidence presented that a reasonable officer would believe that 2.89 ounces of marijuana plus packaging probably would amount to an actual quantity of marijuana exceeding the legal limit.  And if I misspoke earlier, I mean to say 2.89 ounces.

As for the sound that Officer Ahl claims the bags made when they hit the ground, the Court does not believe that adds to the suspicion of criminal conduct.  If Officer Ahl believed that the bags made an unusual sound

consistent with being heavily packed, that is simply not consistent with how the bags actually appeared.  The Court's review of the bags confirm this.  Whatever "full bag" sound Officer Ahl had in mind to indicate fully packed bags, these bags could not have made them.

Officer Allen-Garcia's testimony about bag quantity does not help the government either.  He testified that during the stop, his focus was on the satchel rather than the mylar bags.  He only focused on the number of bags after Mr. Malloy's arrest.  Importantly, Officer Allen-Garcia did not testify that, at the time Officer Ahl grabbed Mr. Malloy's satchel, he (that is, Officer Allen-Garcia) believed Mr. Malloy possessed more than 2 ounces of marijuana.  To the contrary, Officer Allen-Garcia was asked by government counsel whether it was his understanding that Mr. Malloy was under arrest when Officer Ahl grabbed the bag, and he candidly responded, "At that point, he searched" -- "At the point he searched the bag, I wasn't sure."  So the only witness the government called other than Officer Ahl said he was uncertain of whether there was enough evidence to support an actual arrest.

Now, Officer Allen-Garcia did say, when shown body-cam footage, that "the amount that's seen there in all of those bags could equate to over 2 ounces."  Government

counsel then followed up and asked, "So is it fair to say it's possible?"  And Officer Allen-Garcia said no more than "It's possible."  But mere possibility is a quantum of proof less than a "fair probability" or a "substantial chance of criminal activity," which is the standard for probable cause.

The final factor that Officer Ahl says led him to arrest Mr. Malloy was Mr. Malloy's placement of his jacket on top of the bags of marijuana already placed on the ground.  According to Officer Ahl, he viewed that as an act -- that act as an "attempt to conceal the illegal quantity of marijuana that he had just produced and thrown at his feet in front of several officers right in front of him."  But that testimony makes little sense.  Again, no fewer than five officers had witnessed Mr. Malloy pull the marijuana out of his bag and place it on the ground.  At that point, there was nothing to conceal.  The officers knew he had marijuana and could approximate the number of bags in his possession.  Officer Ahl saw all of this.  He witnessed his colleagues surrounding Mr. Malloy and observed them as they watched Mr. Malloy display the mylar bags in his hand. A reasonable officer in those circumstances therefore would not have viewed Mr. Malloy's placement of his bag -- of his jacket atop the marijuana bags as an effort to conceal.

Mr. Malloy's suspected possession of a firearm

does not alter the Court's conclusion that Officer Ahl lacked probable cause to arrest.  No officer testified that the possible possession of a weapon was consistent with a person possessing more than 2 ounces of marijuana for personal consumption.  No officer testified that they suspected Mr. Malloy of possessing with intent to distribute marijuana.

The government offers a secondary argument to justify the seizure of Mr. Malloy's satchel.  It argues that, even if the officers lacked probable cause, suppression is not warranted because Officer Ahl's mistaken perception about the quantity of marijuana was reasonable under the circumstances.

The Court cannot agree.

Officer Ahl's own testimony undermines the reasonableness of the claimed error.  After all, he testified that two to three mylar bags was "typical" for personal use and that "anything beyond that can sometimes indicate it's beyond just personal use and that we would do further investigating and look into that."

But Officer Ahl, contrary to his own testimony about what is typical, did no additional investigation even though the more than "three or four" bags he claims to have seen were slightly more than what he claimed was consistent with personal use.

24

For that reason, this case is distinguishable from *United States versus Allen*, 629 F.2d 51 (D.C. Cir. 1980), on which the government relies.  There, the police arrested the defendant for drinking beer from a bottle in a brown paper bag in a public space, a catering and carry-out service called Barnett's.  It turned out that Barnett's was part of an area covered by a liquor license held by another establishment in the same building called J.J. Lounge, where beer and liquor were sold.

But the Court held there was no evidence the arresting officer knew, or had reason to suspect, that Barnett's was included in an area encompassed by a liquor license.  By all outward appearances, Barnett's was no more than a catering and carry-out service and thus a public space.  The Court reasoned that "All of the facts established on the record relating to the appearance and operation of Barnett's indicate that no one on the scene would be led to suspect that a liquor license which would be needed for the operation of the J.J. Lounge might be applicable to Barnett's catering service or would be led to inquire whether that might be the fact."

Here, by contrast, Officer Ahl, by his own admission, had reason to investigate further.  Again, he testified that the number of mylar bags he observed was consistent with a sum that warranted further investigation,

yet he never conducted any.

Finally, the D.C. Court of Appeals decision in *Harris versus United States*, 260 A.3d 663 (D.C. 2021), does not compel a different result.  In that case, the officer testified that he saw a person in a car trying to "secrete a large amount of marijuana."  The officer observed inside the car a large bag that contained three or four smaller bags, which he testified, in his experience, was "well over 2 ounces."  The officer commented to the defendant that he had "quite a bit of marijuana."  And the defendant, who was outside the car, responded that it belonged to him and the person inside the car, which the officer interpreted as the defendant tried to suggest that he had -- that what he had was below the legal limit.  When the person in the car got out, she locked the door behind her, suggesting to the officer that she did not want the officers to examine the marijuana.  From this combination of factors, the Court held the officer could reasonably believe that there was a fair probability that the amount of marijuana he saw in the car exceeded the legally permissible amount.

This case differs in multiple respects. In *Harris*, the officer testified that the amount of marijuana he believed he saw was "well over 2 ounces," whereas the number of bags that Officer Ahl observed was consistent, in his own words, with "further investigating

and looking into that."

Also, unlike *Harris*, Mr. Malloy was fully cooperative and did not attempt to conceal the marijuana, Officer Ahl's testimony notwithstanding.

Mr. Malloy affirmatively told officers that he had "weed" in the satchel in response to their questions and then voluntarily removed the bags from the satchel.  And as discussed, the placement of his jacket on top of the bags of marijuana cannot reasonably be perceived as an act of concealment.

And unlike *Harris*, Mr. Malloy made no statements that could be interpreted as trying to diminish the quantity of marijuana.  To the contrary, he was forthright about his possession of "weed" and volunteered that he had a scale. Thus, the indicia of suspicion present in *Harris* was not present here.

For the foregoing reasons, the Court will grant defendant's motion.  Both the tangible items seized pursuant to the arrest and defendant's post-arrest statements will be suppressed.

So that is the Court's ruling.

How do the parties wish to proceed at this point?

MS. CARNEY:  Thank you, Your Honor.

At this point, the government would be requesting, pursuant to 18 U.S.C. 3731, 30 days to speak with our

appeals section and evaluate whether our office wishes to appeal the decision.

THE COURT:  Okay.

Mr. Eisenstein.

MR. EISENSTEIN:  Your Honor, if the government is going to undergo that process, I don't believe he has any pending detainers so I think -- I checked the Superior Court docket.  So I think we'd ask for his release while the government makes that decision.

THE COURT:  Okay.

Does the government oppose release while it makes that evaluation?

MS. CARNEY:  The government believes the factors remain the same but defers to the Court.

THE COURT:  Okay.

I think it's appropriate to release Mr. Malloy under the present circumstances.  I do think the factors have changed in the sense that I think the government's case -- the strength of the government's evidence has changed, at least as it relates to the ability to secure a conviction, and so I do think release is appropriate.

What I don't know, however, is whether Mr. Malloy is eligible for High Intensity Supervision and some kind of electronic monitoring.

And so what I'll ask is, let's call Pretrial and

find out what his eligibility is for that.  And once we determine his eligibility, we can go from there.

MR. EISENSTEIN:  Understood.

THE COURT:  Okay.

So hang loose.  Mr. Burton will let you know about timing.

But just stick around.  Hopefully we can get an answer pretty quickly about eligibility and then I can come back sometime after 2:00.  And I have to give these guys a chance to eat some food too because we worked right through lunch.

MR. EISENSTEIN:  I appreciate that, Your Honor.

And I think I'm in trial before Judge Contreras, but I think we're breaking right before 5:00.

THE COURT:  Okay.

Oh, so you're currently -- what time are you due back?

MR. EISENSTEIN:  2:00.

THE COURT:  Let's see what we can get done before 2:00.

MR. EISENSTEIN:  Apologies.

THE COURT:  That's okay.

MR. EISENSTEIN:  I'll just stay here until 2:00 then.

THE COURT:  Yeah.  Okay.

29

(Recess from 1:38 p.m. to 1:58 p.m.)

THE COURT:  Okay, everyone.

So I had requested that Pretrial come up to evaluate Mr. Malloy for his High Intensity Supervision. And so what's the verdict?

Why don't you come on up.

PRETRIAL SERVICES OFFICER:  Good afternoon, Your Honor.

Shania Fennel, Pretrial Services Agency.

We will confirm that the defendant does have a parole violation warrant.

And he also has a non-extraditable warrant that was issued in Pennsylvania on 7/14/2025 due to him -- failure to appear.

So has two warrants.

THE COURT:  Okay.

I take it the parole warrant, do you know if the underlying reason is this case?

PRETRIAL SERVICES OFFICER:  No.  It's another case he was supervised on.

Oh, are you saying the violation?

THE COURT:  Correct.

PRETRIAL SERVICES OFFICER:  I have to look. I just --

THE COURT:  If you would take a quick look,

please.

PRETRIAL SERVICES OFFICER:  So the violation appears to be the D.C. Superior Court arrest on 3/5/2025, which is connected to this case.

And positive drug test and bogus drug test.

Those were the violations they issued a warrant for.

THE COURT:  Oh, okay.

And then it looks like this Pennsylvania matter is a drug-related charge, it looks like.

PRETRIAL SERVICES OFFICER:  Yes.

THE COURT:  Okay.

All right.  Mr. Eisenstein, I think we're in a bit of a pickle, or at least your client is, I should say.

MR. EISENSTEIN:  No, Your Honor.

We would ask Your Honor to release him even though he has a warrant, because, one, I'm in touch with his PDS lawyer who can deal with getting that warrant served and addressing that.

The Pennsylvania matter was active at the time this case was started.  And he only missed court because he's been incarcerated.  And he has a lawyer.  I've told his lawyer that he was in custody and was then unable to appear in court.

So we'd ask Your Honor to order him released and

then we're able to resolve these warrants.

THE COURT:  I'll just ask -- can I ask Pretrial again:  So there's an outstanding warrant from the Parole Commission that hasn't been yet executed; is that right?

PRETRIAL SERVICES OFFICER:  Yes, Your Honor. It appears that the warrant is still active.

THE COURT:  Okay.

So what you're asking me, Mr. Eisenstein, is to release him so that the warrant can get executed, because he may still then remain detained.

MR. EISENSTEIN:  Brief indulgence.

THE COURT:  I mean, the Parole Commission will have to decide, and if that's the case -- I mean, two things.

One is, the sort of execution of the warrant is a separate issue in some sense because in theory his PDS lawyer could approach the Parole Commission and ask for the warrant to be executed, even if he's held, continues to be held, because your concern is that the Parole Commission's warrant is going to hold up any release.

So at the same time if I release him and the Parole Commission warrant then gets executed and they continue to hold him, you know, he's not going to get credit for any time that in theory he could get in this case if that were to come to fruition.  But, you know, I've now

suppressed the evidence so that seems like it's less likely unless the government appeals and things come back down.

MR. EISENSTEIN:  Brief indulgence.

(Defense counsel conferred with the defendant off the record.)

MR. EISENSTEIN:  Your Honor, Mr. Malloy would like you to make a decision about release in this case, and I'll be in touch with somebody from PDS about the warrant.

THE COURT:  Okay.

So I guess what I would say is as follows: I'll release him on his personal recognizance, on the condition that if he is released on the parole detainer, that he has to report to Pretrial within 24 hours, at which Pretrial will have to -- I'll ask Pretrial to notify me. And at that point if he's released, get him re-evaluated for electronic monitoring, which I can't do right now.  But if he's out in the community and there's no warrant hanging over his head, then presumably that's something we could do.

MR. EISENSTEIN:  Okay.  Understood.  Thank you, Your Honor.

THE COURT:  Okay?

Does Pretrial want anything else in terms of reporting if he is released?  Or any other conditions?

PRETRIAL SERVICES OFFICER:  We would request the standard conditions for those on PR.  But if not, then we'll

do the conditions under HISP.

THE COURT:  Well, let's go ahead and use the standard conditions until we're -- and so can you just state what those are on the record so Mr. Malloy can hear it.

PRETRIAL SERVICES OFFICER:  Yes.

He would surrender any passports, not obtain any passports; report law enforcement contact, whether it's arrest or questioning; must notify Pretrial Services if he's traveling outside of the District; Court to approve travel outside of the continental United States; not possess a firearm, destructive device, or other weapons; and verify your address.

THE COURT:  Okay.

PRETRIAL SERVICES OFFICER:  And comply with all rules and regulations.

And also satisfy the outstanding warrant in Pennsylvania.

THE COURT:  Okay.

All right.  So those will be the conditions of pretrial release.

Mr. Malloy, you heard Pretrial.  Those will be the conditions that you have to abide by if you are ultimately released.

I will say the most important of those conditions is that, if you are released off the -- well, let me back

34

up.

So what's going to happen now, Mr. Malloy, is, I will issue a release order, okay?  That does not mean you will be released.  All that will mean is that the parole warrant that has been in place will be executed.

So the next step will be to go before a hearing examiner in the Parole Commission and they will have to decide whether to hold you on their warrant or not.  So what's happened here today is no guarantee that you're going to get out because ultimately the Parole Commission is going to have to make that decision.

Now, if the Parole Commission does let you out, you have an obligation, among other things, but most importantly, to report to Pretrial Services within 24 hours.

And they will then notify me, after which time I will, you know, consider whether you are -- you know, you can be put on electronic monitoring.

Now, all of this is assuming we don't hear from the government that they're going to -- bottom line, this is for the next 30 days until we hear what the government is going to do in your case, okay?

It may be that you're still locked up because of a parole issue.  If you're out, then we'll have to -- you'll have to report, okay?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.

Any questions, anyone, or any concerns?

MS. CARNEY:  No questions or concerns.

Just want to clarify, for purposes of the record and speedy trial, I believe 3161(h)(1)(C) for appeal tolls time for this period.

THE COURT:  I think that's right.  I think the time's automatically tolled.

Okay.  Thank you, all, very much.

And I guess, Mr. Eisenstein, if you do find out before the expiration of the 30 days that he's going to be detained or not detained, if you could just let us know on the parole warrant.

MR. EISENSTEIN:  Yes, absolutely.

(Proceedings concluded at 2:07 p.m.)

C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.


Date:__October 14, 2025_____    _____

William P. Zaremba, RMR, CRR

**COURTROOM DEPUTY:**
**[1]** 3/2
**MR. EISENSTEIN: [14]**
4/3 4/9 27/5 28/3
28/12 28/18 28/21
28/23 30/15 31/11
32/3 32/6 32/19
35/14
**MS. CARNEY: [4]** 4/2
26/23 27/13 35/3
**PRETRIAL SERVICES**
**OFFICER: [9]** 29/7
29/19 29/23 30/2
30/11 31/5 32/24
33/5 33/14
**THE COURT: [27]**
3/10 4/8 4/10 27/3
27/10 27/15 28/4
28/15 28/19 28/22
28/25 29/2 29/16
29/22 29/25 30/8
30/12 31/2 31/7
31/12 32/9 32/21
33/2 33/13 33/18
35/1 35/7
**THE DEFENDANT: [1]**
34/25

**'**

**'Do [1]** 6/4

**1**

**14 [1]** 36/7
**146 [1]** 15/21
**14th [1]** 4/17
**152 [1]** 15/21
**16 [2]** 12/13 19/12
**17 [1]** 19/14
**1710 [1]** 1/19
**17:01:35 [1]** 6/10
**17:01:53 [1]** 6/15
**17:02:20 [1]** 6/23
**17:04:13 [1]** 7/1
**17:05:19 [2]** 7/12
7/18
**17:05:21 [1]** 7/15
**17:05:48 [1]** 7/23
**17:06:06 [1]** 7/20
**17:06:15 [1]** 8/16
**17:06:16 [1]** 8/7
**17:06:55 [1]** 10/14
**17:07:00 [1]** 10/15
**17:07:10 [1]** 10/22
**17:07:17 [1]** 10/23
**18 U.S.C [1]** 26/25
**19 [2]** 17/2 20/14
**19-1 [1]** 20/15
**1959 [1]** 15/11
**1980 [1]** 24/2
**1996 [1]** 13/8
**1:04 [1]** 1/6
**1:38 [1]** 29/1
**1:58 [1]** 29/1

**2**

**2 ounces [4]** 16/24
17/7 21/14 25/9
**2-ounce [1]** 12/15
**2.89 [4]** 11/3 20/13
20/18 20/21
**200 [1]** 5/5
**20001 [1]** 2/6
**20004 [1]** 1/15
**20036 [1]** 1/20
**2004 [1]** 15/21
**2013 [1]** 15/17
**2018 [1]** 15/23
**202 [3]** 1/15 1/20
2/6
**2021 [1]** 25/3
**2022 [1]** 15/25
**2025 [9]** 1/5 4/17
4/22 4/25 5/4 14/4
29/13 30/3 36/7
**22 [1]** 17/1
**237 [1]** 15/17
**24 [2]** 32/13 34/14
**244 [1]** 15/17
**25-93 [2]** 1/4 3/5
**260 [1]** 25/3
**2695 [1]** 1/20
**27th [1]** 4/22
**2:00 [4]** 28/9 28/18
28/20 28/23
**2:07 [1]** 35/15
**2nd [1]** 1/19

**3**

**3.235 [1]** 1/14
**3.5 [5]** 12/11 12/18
18/2 19/11 20/1
**3.5 grams [1]** 19/13
**3.5-gram [3]** 12/10
12/13 19/14
**3/5/2025 [1]** 30/3
**30 [2]** 34/20 35/11
**30 days [1]** 26/25
**307 [1]** 15/11
**313 [1]** 15/11
**3161 [1]** 35/5
**3249 [1]** 2/6
**333 [1]** 2/5
**354-3249 [1]** 2/6
**358 [1]** 15/11
**3731 [1]** 26/25

**4**

**47 [1]** 15/25
**470-2695 [1]** 1/20
**48 [1]** 15/23
**48-904.01 [1]** 17/8

**5**

**51 [1]** 24/2
**517 U.S [1]** 13/8
**543 [1]** 15/21
**568 [1]** 15/16
**57 [2]** 15/23 16/1
**583 [2]** 15/23 16/1

**5:00 [1]** 28/14
**5:01 [2]** 6/9 6/16
**5:02 [1]** 6/23
**5:05 [1]** 7/21
**5:06 [1]** 7/19
**5:07 [1]** 10/15
**5:15 [1]** 5/20
**5th [1]** 5/4

**6**

**601 [1]** 1/14
**629 [1]** 24/2
**6433 [1]** 1/15
**663 [1]** 25/3
**6:15 [1]** 5/23

**7**

**7/14/2025 [1]** 29/13
**714-6433 [1]** 1/15
**7th [1]** 4/25

**8**

**8-point [1]** 11/2
**806 [1]** 13/8
**813 [1]** 13/8
**828 [1]** 15/25
**840 [1]** 15/25

**9**

**9.3 [1]** 19/20
**904.01 [1]** 17/8
**93 [2]** 1/4 3/5

**A**

**A.3d [1]** 25/3
**abide [1]** 33/22
**ability [1]** 27/20
**able [2]** 11/16 31/1
**about [20]** 5/23 6/16
7/5 11/8 13/22 14/21
14/21 14/25 17/16
18/19 18/23 18/24
21/6 23/12 23/22
26/13 28/5 28/8 32/7
32/8
**above [1]** 36/4
**above-titled [1]**
36/4
**absolutely [1]** 35/14
**according [8]** 6/20
8/20 9/3 10/2 11/4
12/2 16/3 22/10
**account [1]** 16/18
**acknowledged [2]**
12/13 18/9
**across [2]** 6/3 18/17
**act [5]** 10/2 15/16
22/11 22/11 26/9
**Action [1]** 3/5
**active [2]** 30/20
31/6
**activity [2]** 15/24
22/5
**actual [4]** 13/10
20/11 20/19 21/21
**actually [3]** 8/2

**18/13 21/2**
**add [1]** 20/13
**added [4]** 8/2 9/13
12/4 12/19
**addition [2]** 16/16
19/3
**additional [5]** 10/24
14/25 17/23 18/19
23/22
**address [1]** 33/12
**addressing [1]** 30/19
**adds [1]** 20/24
**admission [1]** 24/23
**admit [2]** 16/19 19/9
**affirmatively [1]**
26/5
**after [7]** 9/24 11/5
14/18 21/10 23/16
28/9 34/15
**afternoon [3]** 3/11
3/12 29/7
**again [3]** 22/14
24/23 31/3
**against [4]** 6/4 6/7
6/24 14/12
**Agency [1]** 29/9
**agree [1]** 23/14
**agreed [1]** 12/16
**ahead [2]** 4/13 33/2
**Ahl [68]**
**Ahl's [10]** 7/6 13/20
14/5 16/8 18/19
18/23 20/10 23/11
23/15 26/4
**aided [1]** 2/8
**airbags [1]** 9/14
**Alford [1]** 15/21
**all [19]** 3/2 3/10
3/13 3/25 4/12 8/1
15/14 21/24 22/19
23/16 24/13 24/15
30/13 33/14 33/19
34/4 34/18 35/1 35/9
**All right [2]** 30/13
35/1
**Allen [17]** 4/19 7/6
7/13 8/3 8/6 10/10
11/8 11/11 12/21
18/12 21/6 21/11
21/13 21/15 21/23
22/2 24/2
**Allen-Garcia [14]**
4/19 7/6 7/13 8/3
8/6 10/10 11/11
12/21 18/12 21/11
21/13 21/15 21/23
22/2
**Allen-Garcia's [2]**
11/8 21/6
**allow [1]** 10/21
**almost [2]** 10/19
19/20
**already [2]** 6/16
22/9
**also [15]** 3/23 4/22

## A

**also... [13]**  9/18 11/6 11/24 11/25 12/18 13/24 17/10 17/14 18/10 19/12 26/2 29/12 33/16
**alter [1]**  23/1
**although [3]**  13/3 13/24 17/14
**Amendment [1]**  13/7
**AMERICA [2]**  1/3 3/5
**AMIT [2]**  1/10 3/3
**Amit P [1]**  3/3
**among [1]**  34/13
**amount [8]**  9/16 20/4 20/19 21/24 25/6 25/19 25/20 25/22
**amounts [1]**  18/5
**analysis [1]**  13/7
**announce [1]**  4/13
**another [9]**  5/23 7/2 7/5 7/13 7/21 9/19 10/25 24/7 29/19
**answer [1]**  28/8
**any [14]**  5/24 17/22 17/23 17/25 19/7 25/1 27/6 31/20 31/24 32/23 33/6 33/6 35/2 35/2
**anymore [1]**  9/21
**anyone [1]**  35/2
**anything [9]**  3/25 5/25 6/21 7/3 7/22 12/5 17/17 23/18 32/22
**apart [3]**  9/12 9/13 16/11
**Apologies [1]**  28/21
**appeal [2]**  27/2 35/5
**appeals [3]**  25/2 27/1 32/2
**appear [8]**  9/14 9/14 12/19 18/4 18/5 19/10 29/14 30/23
**appearance [3]**  19/6 20/11 24/16
**appearances [3]**  1/12 2/1 24/13
**appeared [2]**  16/10 21/2
**appears [2]**  30/3 31/6
**applicable [1]**  24/20
**appreciate [1]**  28/12
**approach [2]**  6/8 31/17
**approached [1]**  11/4
**appropriate [3]**  3/23 27/16 27/21
**approve [1]**  33/9
**approximate [1]**  22/18
**approximately [1]**  6/9
**are [13]**  3/4 5/2

11/23 12/23 18/4 18/5 20/2 28/16 29/21 33/4 33/22 33/25 34/16
**area [3]**  13/16 24/7 24/12
**argues [2]**  14/14 23/9
**arguing [1]**  17/2
**argument [1]**  23/8
**arm [1]**  10/21
**armed [3]**  7/18 11/9 15/2
**around [3]**  8/12 9/24 28/7
**arrest [21]**  8/25 9/8 10/24 11/6 11/13 11/14 14/16 15/20 16/3 16/17 16/25 17/3 21/10 21/16 21/22 22/8 23/2 26/19 26/19 30/3 33/8
**arrestable [1]**  18/21
**arrested [1]**  24/3
**arresting [3]**  15/6 15/20 24/11
**arrived [1]**  6/17
**as [28]**  3/17 5/2 5/15 9/4 9/11 9/18 10/3 11/22 12/11 13/15 13/15 14/2 14/10 18/2 18/3 18/11 19/5 20/22 22/10 22/11 22/20 22/24 25/12 26/7 26/9 26/12 27/20 32/10
**ask [9]**  7/8 27/8 27/25 30/16 30/25 31/2 31/2 31/17 32/14
**asked [7]**  6/14 7/1 7/22 7/25 8/4 21/15 22/1
**asking [2]**  10/11 31/8
**asks [1]**  5/24
**assuming [1]**  34/18
**atop [1]**  22/24
**attempt [2]**  22/11 26/3
**August [2]**  4/17 4/22
**automatically [1]**  35/8
**available [1]**  3/24
**Avenue [7]**  1/19 2/5 6/6 13/18 13/21 13/25 14/10
**average [2]**  19/16 19/19
**aware [1]**  11/23
**away [2]**  10/10 13/22
**awry [1]**  8/24

## B

**back [7]**  8/12 9/22 10/21 28/9 28/17 32/2 33/25
**background [1]**  14/22
**bag [17]**  4/6 5/16 9/21 10/25 18/2 18/12 19/17 19/19 20/8 21/3 21/6 21/17 21/19 22/16 22/23 24/5 25/7
**baggies [1]**  11/22
**bags [69]**
**bare [1]**  15/12
**Barnett's [6]**  24/6 24/6 24/12 24/13 24/17 24/20
**Barrett [1]**  2/5
**based [4]**  11/7 11/15 13/3 15/21
**basic [1]**  20/11
**basis [1]**  13/5
**be [37]**
**bear [2]**  3/15 4/14
**because [18]**  5/10 5/13 5/15 5/22 8/21 8/25 10/5 14/15 19/2 23/11 28/10 30/17 30/21 31/9 31/16 31/19 34/10 34/22
**been [4]**  19/17 30/22 31/4 34/5
**beer [2]**  24/4 24/9
**before [11]**  1/10 3/25 4/15 13/20 17/23 18/12 28/13 28/14 28/19 34/6 35/11
**behavior [1]**  11/7
**behind [2]**  10/20 25/15
**being [3]**  19/3 19/22 21/1
**believe [9]**  12/17 15/8 17/3 17/9 20/18 20/23 25/18 27/6 35/5
**believed [5]**  9/6 19/1 20/25 21/13 25/23
**believes [1]**  27/13
**believing [1]**  5/6
**belonged [1]**  25/11
**below [1]**  25/14
**bent [1]**  10/10
**between [4]**  11/16 13/15 13/24 14/16
**beyond [8]**  12/5 12/6 12/6 15/13 17/17 17/18 23/18 23/19
**bit [2]**  25/10 30/13
**block [2]**  5/5 13/22
**bloom [1]**  14/4
**body [4]**  8/13 9/25 10/8 21/24

**body-cam [1]**  21/24
**body-worn [1]**  8/13
**bogus [1]**  30/5
**book [1]**  9/1
**Both [1]**  26/18
**bottle [1]**  24/4
**bottom [1]**  34/19
**breaking [1]**  28/14
**Brief [2]**  31/11 32/3
**briefs [1]**  4/21
**bro [1]**  10/9
**broadcast [1]**  5/6
**brought [1]**  4/24
**brown [1]**  24/4
**building [1]**  24/8
**bulge [1]**  11/8
**bulging [1]**  19/7
**Burton [1]**  28/5
**butt [1]**  10/18

## C

**Caelainn [2]**  1/13 3/7
**caelainn.carney [1]**  1/16
**calculus [1]**  20/14
**call [1]**  27/25
**called [5]**  4/17 4/20 21/20 24/6 24/8
**cam [3]**  9/25 10/8 21/24
**came [2]**  7/6 11/2
**camera [1]**  8/13
**can [23]**  5/21 7/10 8/2 8/5 8/13 9/16 10/8 10/11 10/13 11/21 12/5 17/17 23/18 28/2 28/7 28/8 28/19 30/18 31/2 31/9 33/3 33/4 34/17
**can't [1]**  32/16
**candidly [1]**  21/17
**cannot [2]**  23/14 26/9
**car [12]**  5/15 6/23 7/19 8/12 8/12 8/19 25/5 25/7 25/11 25/12 25/14 25/19
**Carney [2]**  1/13 3/7
**carry [4]**  5/17 16/6 24/5 24/14
**carry-out [2]**  24/5 24/14
**carrying [1]**  5/16
**case [15]**  13/11 14/19 14/23 24/1 25/4 25/21 27/19 29/18 29/19 30/4 30/21 31/13 31/24 32/7 34/21
**cases [1]**  3/19
**catering [3]**  24/5 24/14 24/20
**cause [13]**  13/6 14/17 15/7 15/8

**C**

cause... [9]   15/12
 15/18 16/25 17/3
 17/9 20/13 22/6 23/2
 23/10
CCTV [2]   14/3 14/8
cease [1]   14/20
cellophane [1]   11/22
certain [1]   11/10
Certified [1]   2/4
certify [1]   36/2
CH [1]   2/5
chambers [2]   4/5
 4/24
chance [5]   15/24
 16/22 17/10 22/4
 28/10
changed [2]   27/18
 27/20
channel [2]   5/20
 14/6
charge [1]   30/10
checked [1]   27/7
checks [1]   6/24
Cir [2]   15/25 24/2
circumstances [6]
 15/5 15/22 16/20
 22/22 23/13 27/17
citation [1]   9/1
citations [2]   3/18
 3/22
cites [1]   14/19
claimed [5]   9/7 12/8
 13/11 23/16 23/24
claims [4]   16/5
 16/25 20/22 23/23
clarify [1]   35/4
clear [1]   4/5
client [1]   30/14
close [1]   8/14
coat [2]   10/5 10/6
COBURN [1]   1/18
coburngreenbaum.com
 [1]   1/21
Code [1]   17/7
colleagues [1]   22/20
collectively [1]
 12/15
colorful [1]   11/23
COLUMBIA [8]   1/1
 9/18 11/24 15/22
 15/25 17/6 18/10
 19/15
combination [1]
 25/17
come [5]   28/8 29/3
 29/6 31/25 32/2
comes [1]   11/20
coming [2]   12/23
 18/15
commented [1]   25/9
Commission [7]   31/4
 31/12 31/17 31/22
 34/7 34/10 34/12
Commission's [1]

31/19
committed [2]   15/9
 16/23
common [2]   5/16
 17/17
communications [1]
 5/20
community [1]   32/17
compel [1]   25/4
comply [1]   33/14
computer [1]   2/8
computer-aided [1]
 2/8
conceal [5]   10/4
 22/11 22/17 22/24
 26/3
concealment [1]
 26/10
concern [1]   31/19
concerns [3]   13/4
 35/2 35/3
concluded [2]   16/22
 35/15
concludes [1]   16/21
conclusion [3]   9/9
 15/19 23/1
condition [1]   32/12
conditions [7]   32/23
 32/25 33/1 33/3
 33/19 33/22 33/24
conduct [2]   18/13
 20/24
conducted [2]   17/23
 25/1
conferred [1]   32/4
confirm [2]   21/3
 29/10
confirming [2]   14/18
 14/22
confronted [2]   12/12
 19/9
connected [1]   30/4
consider [1]   34/16
Considering [1]
 16/20
consistency [1]   12/2
consistent [7]   18/24
 21/1 21/2 23/3 23/24
 24/25 25/25
Constitution [1]   2/5
consumption [1]   23/5
contact [1]   33/7
contain [4]   3/22
 19/1 19/10 20/9
contained [2]   12/18
 25/7
containing [3]   12/11
 18/2 20/1
contemporaneous [1]
 14/6
contends [1]   14/17
continental [1]
 33/10
continue [2]   5/22
 31/23

continued [3]   2/11
 5/12 7/16
continues [2]   14/11
 31/18
contrary [4]   20/10
 21/14 23/21 26/13
contrast [1]   24/22
Contreras [1]   28/13
conviction [1]   27/21
cooperative [1]   26/3
correct [2]   29/22
 36/3
corroborated [3]
 5/19 14/5 14/8
could [15]   5/9 7/3
 10/18 17/24 19/1
 19/6 21/5 21/25
 22/18 25/18 26/12
 31/17 31/24 32/18
 35/12
counsel [3]   21/15
 22/1 32/4
court [38]
COURT'S [6]   1/10 5/2
 13/9 21/2 23/1 26/21
covered [2]   16/15
 24/7
CR [1]   1/4
cream [1]   6/12
credibly [1]   18/14
credit [1]   31/23
crime [2]   16/23
 16/24
criminal [6]   3/5
 15/24 18/13 19/25
 20/24 22/5
Criminal Action [1]
 3/5
criminality [1]   18/8
critical [1]   19/24
cross [2]   12/8 12/16
cross-examination [1]
 12/8
crossed [4]   6/3 6/3
 13/21 14/12
crosses [1]   14/10
crossing [2]   6/6
 13/18
crosswalk [1]   6/4
crouched [1]   8/14
CRR [2]   36/2 36/8
cuffed [1]   10/23
currently [1]   28/16
custody [1]   30/23

**D**

D.C [8]   1/5 1/15
 1/20 2/6 15/25 17/7
 24/2 25/3
D.C. [2]   25/2 30/3
D.C. Superior [1]
 30/3
DA'JON [3]   1/6 3/6
 4/15
dangerous [3]   7/18

11/9 15/2
database [2]   14/18
 15/1
databases [2]   6/24
 7/17
Date [1]   36/7
days [3]   26/25 34/20
 35/11
deal [1]   30/18
dealers [1]   18/11
decide [2]   31/13
 34/8
decision [6]   13/9
 25/2 27/2 27/9 32/7
 34/11
declines [1]   13/19
deducting [1]   20/16
deems [1]   13/23
Def [3]   5/20 5/23
 12/12
Def.'s [2]   17/1
 20/14
defendant [12]   1/7
 1/18 3/8 4/15 11/13
 13/11 24/4 25/9
 25/10 25/13 29/10
 32/4
defendant's [3]   14/3
 26/18 26/19
defense [2]   4/20
 32/4
defers [1]   27/14
Delaware [5]   6/6
 13/18 13/21 13/25
 14/10
depends [1]   15/18
describe [1]   19/5
described [3]   5/15
 9/4 11/22
description [2]   5/6
 5/8
designation [3]   7/18
 11/9 15/2
destructive [1]
 33/11
detained [3]   31/10
 35/12 35/12
detainer [1]   32/12
detainers [1]   27/7
detect [1]   6/20
determine [1]   28/2
Devenpeck [1]   15/20
device [1]   33/11
dial [1]   18/21
did [15]   5/13 6/20
 8/24 9/1 9/14 9/14
 12/17 12/19 16/16
 19/10 21/11 21/23
 23/22 25/16 26/3
didn't [2]   8/22 9/21
different [1]   25/4
differs [1]   25/21
diminish [1]   26/12
direct [3]   12/14
 12/22 18/25

**D**

directly [1]   12/4
discussed [1]   26/8
dispensaries [8]
 11/24 12/9 12/24
 18/9 18/15 18/16
 20/2 20/6
dispensary [1]   18/18
display [1]   22/21
disposes [1]   13/1
distance [4]   6/18
 8/14 13/14 13/22
distinguish [1]
 11/16
distinguishable [1]
 24/1
distribute [2]   11/18
 23/6
DISTRICT [16]   1/1
 1/1 1/11 5/18 9/17
 11/24 12/9 13/16
 15/22 15/25 16/5
 17/6 18/9 18/17
 19/15 33/9
do [18]   3/20 6/7
 7/11 7/11 7/14 12/7
 14/12 17/18 23/19
 26/22 27/17 27/21
 29/17 32/16 32/18
 33/1 34/21 35/10
do you know [1]
 29/17
do you see [1]   7/14
docket [2]   3/24 27/8
does [12]   18/7 18/20
 20/13 20/23 21/7
 23/1 25/3 27/11
 29/10 32/22 34/3
 34/12
doing [1]   6/10
DOJ [1]   1/13
DOJ-USAO [1]   1/13
don't [8]   3/18 8/6
 10/9 18/16 27/6
 27/22 29/6 34/18
done [2]   18/1 28/19
door [1]   25/15
doubt [1]   15/13
down [2]   7/12 32/2
Draper [1]   15/11
Draper v [1]   15/11
drawn [1]   15/19
drew [1]   9/9
drinking [1]   24/4
driver's [3]   7/6
 8/20 8/23
drop [2]   8/9 9/5
dropping [1]   10/1
drops [1]   8/15
drug [3]   30/5 30/5
 30/10
drug-related [1]
 30/10
drugs [1]   16/6
due [2]   28/16 29/13

during [3]   5/20
 12/21 21/8

**E**

each [4]   12/10 18/2
 19/16 19/19
earlier [2]   7/21
 20/21
early [1]   14/1
eat [1]   28/10
ECF [3]   17/1 20/14
 20/14
effort [1]   22/24
eight [2]   19/16
 20/15
Eisenstein [6]   1/18
 3/8 27/4 30/13 31/8
 35/10
either [2]   3/18 21/7
electronic [3]   27/24
 32/16 34/17
eligibility [3]   28/1
 28/2 28/8
eligible [1]   27/23
else [3]   10/11 10/12
 32/22
Email [2]   1/16 1/21
emerged [1]   8/11
empty [1]   9/14
encompassed [1]
 24/12
enforcement [2]   6/24
 33/7
enjoying [1]   6/11
enough [3]   20/4 20/9
 21/21
equal [2]   12/14
 19/13
equate [1]   21/25
error [1]   23/16
established [1]
 24/16
establishment [1]
 24/8
estimation [1]   18/14
evaluate [2]   27/1
 29/4
evaluated [1]   32/15
evaluation [1]   27/12
even [7]   14/22 16/16
 19/9 23/10 23/22
 30/16 31/18
ever [1]   6/13
everyone [3]   3/11
 3/13 29/2
everything [1]   8/3
evidence [16]   4/19
 4/21 4/23 4/24 5/1
 13/5 13/20 14/14
 15/14 18/25 20/12
 20/17 21/21 24/10
 27/19 32/1
evident [1]   14/2
Ex [20]   5/20 5/23
 6/10 6/15 6/23 7/1

7/12 7/15 7/18 7/20
 7/23 8/7 8/16 10/14
 10/14 10/22 10/23
 12/12 14/7 20/14
examination [2]   12/8
 12/22
examine [1]   25/16
examiner [1]   34/7
exceed [4]   19/14
 19/20 20/4 20/9
exceeded [1]   25/20
exceeding [1]   20/20
excuse [4]   6/3 10/19
 11/2 18/4
executed [5]   31/4
 31/9 31/18 31/22
 34/5
execution [1]   31/15
Exhibit [2]   14/2
 14/3
exhibits [2]   4/19
 4/20
existence [1]   15/18
expensive [1]   10/5
experience [3]   11/16
 12/22 25/8
expiration [1]   35/11
Explaining [1]   11/14
extraditable [1]
 29/12

**F**

F.2d [1]   24/2
F.4th [1]   15/25
facing [1]   9/22
fact [9]   8/18 13/14
 13/15 14/8 14/12
 16/18 18/22 19/23
 24/21
factor [2]   19/24
 22/7
factors [4]   11/18
 25/17 27/13 27/17
facts [4]   15/5 15/19
 17/2 24/15
factual [1]   5/2
failed [1]   13/17
failure [1]   29/14
fair [4]   15/15 22/1
 22/4 25/18
fairly [1]   11/9
far [1]   13/23
feel [2]   18/4 18/5
feet [2]   10/10 22/13
Fennel [2]   2/2 29/9
few [1]   4/14
fewer [1]   22/15
file [1]   3/23
final [1]   22/7
Finally [3]   7/19
 14/8 25/2
find [2]   28/1 35/10
findings [1]   5/2
finds [1]   18/22
firearm [3]   11/10

22/23 33/11
firearms [1]   5/17
first [6]   5/4 6/12
 13/2 13/16 14/19
 20/3
five [2]   16/12 22/15
Floor [1]   1/19
Florida [1]   15/16
focus [1]   21/8
focused [1]   21/9
follow [2]   5/12 5/22
followed [1]   22/1
follows [2]   5/2
 32/10
food [1]   28/10
footage [4]   13/17
 14/3 14/9 21/24
foregoing [2]   26/17
 36/3
forthright [1]   26/13
forward [1]   10/15
found [2]   4/6 10/4
four [3]   16/10 23/23
 25/7
Fourth [1]   13/7
free [1]   8/22
front [2]   22/13
 22/13
fruition [1]   31/25
full [4]   9/15 14/4
 16/10 21/3
fullness [2]   9/11
 19/2
fully [2]   21/4 26/2
fulsomely [1]   19/5
fulsomeness [1]
 18/20
further [8]   12/7
 14/5 17/19 17/21
 23/20 24/23 24/25
 25/25

**G**

games [1]   10/16
Garcia [14]   4/19 7/6
 7/13 8/3 8/6 10/10
 11/11 12/21 18/12
 21/11 21/13 21/15
 21/23 22/2
Garcia's [2]   11/8
 21/6
gave [1]   6/18
get [7]   28/7 28/19
 31/9 31/23 31/24
 32/15 34/10
gets [2]   15/4 31/22
getting [3]   8/6 8/8
 30/18
give [1]   28/9
go [6]   4/13 7/8 8/24
 28/2 33/2 34/6
go ahead [1]   4/13
going [13]   5/21 6/19
 7/11 8/8 27/6 31/20
 31/23 34/2 34/9

**G**

**going... [4]**  34/10 34/19 34/21 35/11
**gone [1]**  9/15
**good [3]**  3/11 3/12 29/7
**got [4]**  4/11 7/19 8/1 25/14
**Gov't [16]**  6/9 6/15 6/23 7/1 7/12 7/15 7/18 7/20 7/23 8/7 8/16 10/14 10/14 10/22 10/23 14/7
**Gov't Ex [1]**  7/20
**Gov't's [1]**  17/1
**government [22]**  1/13 3/7 4/2 4/17 4/24 13/17 14/2 16/25 21/7 21/15 21/19 21/25 23/8 24/3 26/24 27/5 27/9 27/11 27/13 32/2 34/19 34/20
**government's [4]**  5/1 5/3 27/18 27/19
**grabbed [4]**  10/16 11/12 21/12 21/17
**gram [3]**  12/10 12/13 19/14
**grams [8]**  12/11 12/18 18/2 19/11 19/13 19/17 19/20 20/1
**grant [1]**  26/17
**greater [1]**  18/21
**GREENBAUM [1]**  1/18
**ground [12]**  8/5 9/5 10/6 10/9 13/19 16/11 16/15 18/1 20/3 20/23 22/10 22/16
**grounds [1]**  13/1
**guarantee [1]**  34/9
**guess [2]**  32/10 35/10
**gun [2]**  10/18 16/13
**guns [1]**  16/6
**guys [1]**  28/9

**H**

**had [40]**
**half [1]**  13/22
**hand [5]**  7/24 9/5 12/19 14/23 22/21
**hand-packed [1]**  12/19
**hands [3]**  8/22 9/2 10/20
**hang [1]**  28/5
**hanging [1]**  32/17
**happen [1]**  34/2
**happened [1]**  34/9
**hard [1]**  7/14
**Harris [6]**  15/16 25/3 25/22 26/2

**has [10]**  7/17 13/19 27/6 27/19 29/12 29/15 30/17 30/22 32/13 34/5
**hasn't [1]**  31/4
**have [31]**  9/1 9/15 12/17 13/18 15/3 16/13 16/17 16/21 17/8 17/24 18/1 18/16 19/14 19/17 19/17 19/19 21/5 22/23 23/23 27/18 28/9 29/10 29/23 31/13 32/14 33/22 34/7 34/11 34/13 34/23 34/24
**he [123]**
**He just [1]**  6/3
**he knew [1]**  9/8
**he's [8]**  7/8 30/22 31/18 31/23 32/15 32/17 33/8 35/11
**head [2]**  10/17 32/18
**heading [1]**  6/6
**hear [3]**  33/4 34/18 34/20
**heard [7]**  5/21 7/10 10/8 10/11 10/13 16/18 33/21
**hearing [3]**  1/10 4/16 34/6
**heart [1]**  15/4
**heavily [1]**  21/1
**held [7]**  4/16 20/3 24/7 24/10 25/17 31/18 31/19
**help [1]**  21/7
**her [1]**  25/15
**here [8]**  12/4 18/13 19/12 19/22 24/22 26/16 28/23 34/9
**Here's [1]**  16/2
**High [2]**  27/23 29/4
**higher [1]**  19/8
**him [24]**  6/9 6/14 6/19 7/8 7/22 8/4 9/20 10/22 10/23 11/6 13/14 13/18 17/2 22/7 22/14 25/11 29/13 30/16 30/25 31/9 31/21 31/23 32/11 32/15
**himself [1]**  16/16
**his [66]**
**HISP [1]**  33/1
**hit [3]**  9/11 16/10 20/23
**hold [3]**  31/20 31/23 34/8
**Honor [14]**  3/4 4/2 4/3 4/4 26/23 27/5 28/12 29/8 30/15 30/16 30/25 31/5 32/6 32/20

**HONORABLE [3]**  1/16 3/2 3/3
**Hopefully [1]**  28/7
**hot [2]**  8/8 10/13
**hours [2]**  32/13 34/14
**house [2]**  11/2 20/12
**how [2]**  21/2 26/22
**however [2]**  3/20 27/22
**hyper [1]**  19/22
**hyper-technical [1]**  19/22

**I**

**I believe [1]**  35/5
**I can [1]**  28/8
**I can't [1]**  32/16
**I checked [1]**  27/7
**I don't [3]**  3/18 27/6 27/22
**I guess [1]**  32/10
**I had [1]**  29/3
**I have [1]**  29/23
**I just [1]**  29/24
**I know [1]**  4/4
**I mean [1]**  20/21
**I should [1]**  30/14
**I think [6]**  4/5 27/16 27/18 30/13 35/7 35/7
**I will [3]**  33/24 34/3 34/16
**I would [1]**  32/10
**I'll [8]**  3/15 3/23 27/25 28/23 31/2 32/7 32/11 32/14
**I'll release [1]**  32/11
**I'm [4]**  3/13 12/4 28/13 30/17
**I've [2]**  30/22 31/25
**ice [1]**  6/11
**identification [1]**  8/24
**identified [1]**  11/18
**identify [1]**  3/18
**identity [2]**  14/18 14/22
**illegal [5]**  9/6 9/8 10/4 15/9 22/11
**immediate [1]**  13/16
**important [2]**  19/12 33/24
**importantly [4]**  12/4 17/14 21/10 34/14
**inadvertently [1]**  8/23
**incarcerated [1]**  30/22
**incident [1]**  10/24
**included [1]**  24/12
**including [3]**  4/23 11/3 11/19
**inconsistent [1]**

**indeed [1]**  15/13
**indicate [5]**  12/5 17/17 21/4 23/19 24/17
**indicates [3]**  18/17 19/18 19/21
**indicia [1]**  26/15
**individual [3]**  12/12 14/21 19/7
**individual's [1]**  14/21
**indulgence [2]**  31/11 32/3
**information [5]**  7/16 14/20 14/25 15/3 15/7
**infraction [1]**  5/24
**Initially [1]**  5/25
**initiated [1]**  6/13
**inquire [1]**  24/21
**inquiry [1]**  13/10
**inside [2]**  25/6 25/12
**inspected [2]**  17/25 19/4
**instance [1]**  17/24
**instead [1]**  8/18
**intended [1]**  8/25
**Intensity [2]**  27/23 29/4
**intent [2]**  11/18 23/6
**intentions [1]**  13/6
**Interestingly [1]**  11/11
**interpreted [2]**  25/12 26/12
**intimates [1]**  13/2
**investigate [1]**  24/23
**investigating [5]**  12/7 17/19 17/21 23/20 25/25
**investigation [3]**  17/23 23/22 24/25
**is [81]**
**is that right [1]**  31/4
**Island [1]**  1/19
**isn't [1]**  20/7
**issue [3]**  31/16 34/3 34/23
**issued [2]**  29/13 30/6
**it [29]**  8/6 8/9 10/4 10/5 10/5 10/17 11/20 12/13 13/20 14/1 17/14 18/17 18/17 19/12 19/23 21/15 22/1 22/16 23/9 24/6 25/11 27/11 27/20 29/17 30/9 30/10 31/6 33/4 34/22

**I**

It appears [1]   31/6
it's [14]   4/6 12/5
  12/6 17/17 17/18
  18/15 18/15 22/2
  22/3 23/19 27/16
  29/19 32/1 33/7
It's common [1]
  17/17
items [1]   26/18
its [3]   11/19 12/2
  18/3
itself [3]   3/21 3/23
  18/7

**J**

J.J [2]   24/8 24/19
jacket [10]   5/10
  5/11 8/9 8/9 10/1
  11/1 16/15 22/8
  22/24 26/8
Jason [1]   1/18
jaywalk [1]   13/14
jaywalked [1]   16/7
jaywalking [8]   5/25
  6/9 6/13 9/2 13/23
  14/7 14/8 14/23
JUDGE [2]   1/11 28/13
July [1]   14/4
just [21]   3/15 3/17
  4/5 6/1 6/3 6/3 9/20
  12/5 12/6 17/18 19/6
  20/6 22/12 23/19
  28/7 28/23 29/24
  31/2 33/3 35/4 35/12
justify [1]   23/9

**K**

kind [5]   3/20 9/12
  9/13 16/11 27/23
knew [3]   9/8 22/17
  24/11
know [15]   3/19 4/4
  9/20 12/9 18/16
  19/25 20/8 27/22
  28/5 29/17 31/23
  31/25 34/16 34/16
  35/12
knowledge [3]   15/6
  16/2 16/17
known [2]   15/19 17/2
knows [1]   18/3
Knuckles [1]   5/10

**L**

L-shape [1]   9/21
L-shaped [1]   11/8
label [2]   19/18
  19/21
labeled [2]   12/11
  18/2
lacked [2]   23/2
  23/10
large [3]   9/4 25/6
  25/7

larger [1]   4/6
later [5]   5/23 6/2
  7/5 10/14 10/22
law [3]   6/24 17/6
  33/7
lawful [4]   17/7 18/9
  20/4 20/6
lawfully [1]   9/17
lawyer [4]   30/18
  30/22 30/23 31/17
learned [4]   6/25
  7/17 14/25 18/2
least [4]   6/16 16/12
  27/20 30/14
leaves [1]   14/1
led [4]   17/2 22/7
  24/18 24/20
left [2]   6/22 7/24
legal [5]   11/24
  15/16 19/14 20/20
  25/14
legally [2]   17/5
  25/20
less [4]   15/13 15/13
  22/4 32/1
lesson [1]   13/8
let [7]   3/17 4/13
  9/20 28/5 33/25
  34/12 35/12
let's [4]   17/5 27/25
  28/19 33/2
Let's see [1]   28/19
level [2]   11/25
  18/11
license [9]   6/15
  6/19 8/20 8/23 9/19
  11/5 24/7 24/13
  24/18
light [2]   18/4 18/5
like [6]   5/25 18/15
  30/9 30/10 32/1 32/6
likely [2]   20/8 32/1
limit [3]   19/15
  20/20 25/14
limitation [1]   14/24
limited [1]   20/6
Lin [1]   15/24
line [2]   7/14 34/19
liquor [4]   24/7 24/9
  24/12 24/18
little [1]   22/14
locked [2]   25/15
  34/22
look [6]   7/14 12/7
  17/19 23/20 29/23
  29/25
looking [2]   12/16
  26/1
looks [3]   12/1 30/9
  30/10
loose [1]   28/5
lose [1]   8/23
Lounge [2]   24/8
  24/19
lunch [1]   28/11

**M**

M Street [2]   6/6
  14/1
made [5]   16/11 20/23
  20/25 21/5 26/11
make [7]   4/5 8/21
  13/23 14/24 14/24
  32/7 34/11
makes [5]   8/17 19/24
  22/14 27/9 27/11
MALLOY [88]
Malloy's [22]   4/7
  4/15 5/8 6/21 8/4
  8/14 8/19 8/23 9/19
  10/11 10/20 11/1
  11/7 11/9 13/4 17/13
  21/10 21/12 22/8
  22/23 22/25 23/9
manner [1]   19/7
marc [3]   1/18 1/21
  3/8
March [2]   5/4 14/1
marijuana [47]
marked [1]   5/14
marks [2]   3/20 3/22
matched [1]   5/6
math [2]   19/12 20/11
matter [4]   15/4 30/9
  30/20 36/4
matters [1]   19/23
Matthew [1]   4/18
maximum [1]   9/16
may [2]   31/10 34/22
me [12]   3/15 3/17
  4/13 4/14 6/3 10/20
  11/3 18/4 31/8 32/14
  33/25 34/15
mean [5]   20/21 31/12
  31/13 34/3 34/4
meantime [1]   8/11
Meanwhile [1]   7/21
mechanical [1]   2/8
MEHTA [2]   1/10 3/3
mere [2]   14/16 22/3
Merit [1]   2/3
might [4]   13/18
  16/13 24/19 24/21
mind [2]   8/6 21/4
minute [3]   5/23 7/5
  7/21
minutes [2]   4/14
  14/16
missed [1]   30/21
misspoke [1]   20/21
mistaken [1]   23/11
moment [1]   14/4
Moncler [2]   5/11
  10/9
monitoring [3]   27/24
  32/16 34/17
Moose [1]   5/10
more [18]   9/10 12/18
  15/10 15/12 16/9
  16/23 17/11 17/12
  19/2 19/10 19/17

19/20 21/13 22/2
  23/4 23/23 23/24
  24/13
more than [1]   16/9
most [2]   33/24 34/13
Mot [2]   17/1 20/14
motion [5]   1/10 3/14
  4/16 4/16 26/18
motivated [1]   13/12
motivations [1]
  13/10
move [1]   18/21
moved [3]   4/19 4/20
  10/21
movements [1]   8/17
moving [1]   14/9
Mr [2]   16/7 21/12
Mr. [109]
Mr. Burton [1]   28/5
Mr. Eisenstein [4]
  27/4 30/13 31/8
  35/10
Mr. Malloy [84]
Mr. Malloy's [20]
  4/7 5/8 6/21 8/4
  8/14 8/19 8/23 9/19
  10/11 10/20 11/1
  11/7 11/9 13/4 17/13
  21/10 22/8 22/23
  22/25 23/9
much [1]   35/9
multiple [2]   18/16
  25/21
must [3]   14/20 16/18
  33/8
my [2]   4/13 18/14
mylar [25]   7/25 8/5
  8/10 9/4 10/1 10/25
  11/22 11/23 12/3
  12/22 16/9 16/14
  17/13 17/16 17/20
  18/7 18/10 19/3 20/1
  20/5 20/11 21/9
  22/21 23/17 24/24

**N**

name [1]   6/18
namely [1]   15/1
narcotics [1]   5/17
necessarily [1]   3/19
needed [1]   24/19
Neither [1]   17/22
net [4]   12/11 12/18
  19/13 20/1
never [1]   25/1
nevertheless [1]
  5/12
next [2]   34/6 34/20
no [28]   1/4 4/9 4/11
  4/20 6/1 8/17 9/1
  13/6 13/19 14/1 14/4
  14/17 14/19 20/17
  22/2 22/14 23/2 23/5
  23/22 24/10 24/13
  24/17 26/11 29/19

**N**

no... [4]  30/15 32/17 34/9 35/3
non [1]  29/12
non-extraditable [1]  29/12
northbound [2]  14/10 14/11
Northwest [1]  5/5
not [53]
Notably [2]  8/24 12/21
noted [1]  18/11
notes [2]  13/14 13/24
nothing [2]  6/10 22/17
notify [3]  32/14 33/8 34/15
notwithstanding [1]  26/4
now [10]  3/3 3/4 10/15 15/4 21/23 31/25 32/16 34/2 34/12 34/18
number [12]  7/25 9/10 12/1 17/1 17/19 19/1 20/14 20/14 21/9 22/18 24/24 25/24
NW [3]  1/14 1/19 2/5

**O**

obligation [1]  34/13
observation [2]  11/8 13/23
observed [9]  9/3 14/7 17/12 17/20 18/23 22/20 24/24 25/6 25/24
observer [1]  19/5
observing [1]  6/1
obstructed [1]  13/20
obtain [1]  33/6
October [3]  1/5 4/25 36/7
off [3]  8/9 32/4 33/25
offense [2]  15/9 19/25
offers [1]  23/8
office [1]  27/1
officer [126]
Officer Ahl [65]
Officer Ahl's [10]  7/6 13/20 14/5 16/8 18/19 18/23 20/10 23/11 23/15 26/4
officer's [1]  15/6
officers [17]  5/7 6/16 8/8 8/14 9/23 9/25 10/20 15/3 16/18 16/25 17/8 22/13 22/15 22/17 23/10 25/16 26/5

Official [1]  2/4
Oh [3]  28/16 29/21 30/8
okay [22]  4/12 27/3 27/10 27/15 28/4 28/15 28/22 28/25 29/2 29/16 30/8 30/12 31/7 32/9 32/19 32/21 33/13 33/18 34/3 34/21 34/24 35/9
once [1]  28/1
one [7]  9/16 16/4 16/12 17/25 24/17 30/17 31/15
only [9]  4/3 13/22 14/23 16/24 17/8 18/5 21/9 21/19 30/21
open [1]  19/3
opened [1]  7/24
operation [2]  24/17 24/19
Opp'n [1]  17/1
oppose [1]  27/11
ORAL [1]  1/10
order [2]  30/25 34/3
ordinary [1]  13/6
other [12]  4/9 5/7 7/14 9/23 10/19 10/20 16/18 17/22 21/20 32/23 33/11 34/13
ounce [1]  12/15
ounces [18]  9/16 11/3 12/14 15/10 16/24 17/7 17/11 19/2 19/13 20/9 20/13 20/18 20/21 21/14 21/25 23/4 25/9 25/23
our [3]  3/21 26/25 27/1
out [14]  7/19 7/25 10/13 22/16 24/5 24/6 24/14 25/15 28/1 32/17 34/10 34/12 34/23 35/10
outline [1]  9/21
outright [1]  13/2
outset [1]  3/17
outside [4]  5/1 25/11 33/9 33/10
outstanding [2]  31/3 33/16
outward [2]  19/6 24/13
over [10]  6/2 8/15 9/15 10/10 10/17 12/15 21/25 25/8 25/23 32/18
overall [1]  12/1
own [6]  17/20 18/3 23/15 23/21 24/22 25/25

**P**

p.m [10]  1/6 6/9 6/16 6/23 7/19 7/21 10/15 29/1 29/1 35/15
package [1]  12/10
packaged [1]  18/15
packages [1]  12/10
packaging [8]  11/3 11/19 11/21 12/2 20/5 20/6 20/17 20/19
packed [6]  12/19 18/4 18/5 19/6 21/1 21/4
paper [1]  24/5
parole [14]  29/11 29/17 31/3 31/12 31/17 31/19 31/22 32/12 34/4 34/7 34/10 34/12 34/23 35/13
part [2]  18/25 24/7
parties [2]  4/21 26/22
passenger [1]  7/2
passenger's [1]  8/19
passports [2]  33/6 33/7
pat [1]  7/12
pat-down [1]  7/12
patrol [1]  6/23
pavement [1]  9/12
PDS [3]  30/17 31/16 32/8
pedestrians [1]  14/9
pending [1]  27/7
Pennsylvania [4]  29/13 30/9 30/20 33/17
people [2]  15/16 16/5
perceived [4]  10/3 12/15 18/20 26/9
perception [1]  23/12
period [1]  35/6
permissible [1]  25/20
person [7]  3/9 15/3 19/13 23/4 25/5 25/12 25/14
person's [1]  14/22
personal [12]  9/17 11/17 11/21 12/3 12/6 17/15 17/18 23/5 23/18 23/19 23/25 32/11
personal-use-possession [1]  17/15
personally [1]  19/4
phone [2]  8/20 10/13
photo [6]  8/19 8/21 8/25 9/19 9/22 9/24
photograph [1]  11/5
physical [3]  4/23

physically [1]  17/23
pick [1]  6/19
picked [1]  17/25
pickle [1]  30/14
place [3]  11/6 22/16 34/5
placed [6]  9/8 10/20 16/14 18/1 20/3 22/9
placement [3]  22/8 22/23 26/8
Plaintiff [1]  1/4
plastic [1]  11/21
play [1]  13/6
playing [1]  10/16
please [1]  30/1
PLLC [1]  1/18
plus [1]  20/19
pocket [2]  4/7 11/1
point [15]  6/21 7/9 8/3 8/18 8/21 9/7 11/2 20/7 20/7 21/18 21/18 22/17 26/22 26/24 32/15
police [5]  5/15 13/16 14/6 14/20 24/3
positioned [1]  8/4
positive [1]  30/5
possess [3]  9/17 19/14 33/10
possessed [4]  12/11 17/9 17/11 21/13
possessing [3]  16/23 23/4 23/6
possession [16]  9/6 9/9 11/6 11/15 11/17 11/20 15/10 17/4 17/6 17/13 17/15 19/24 22/19 22/25 23/3 26/14
possibility [1]  22/3
possible [3]  22/2 22/3 23/3
post [1]  26/19
post-arrest [1]  26/19
PR [1]  32/25
preliminarily [1]  3/25
prepared [1]  3/13
preponderance [1]  15/14
presence [3]  5/1 5/14 16/4
present [5]  3/7 3/9 26/15 26/16 27/17
presented [2]  19/3 20/17
preserve [1]  13/17
presiding [1]  3/3
presumably [1]  32/18
pretextual [1]  13/4
pretrial [13]  2/2 27/25 29/3 29/9 31/2

**P**

**pretrial... [8]**
32/13 32/14 32/14
32/22 33/8 33/20
33/21 34/14
**pretty [1]** 28/8
**Prettyman [1]** 2/5
**primary [1]** 5/3
**probability [4]**
15/15 18/21 22/4
25/19
**probable [11]** 13/6
15/8 15/12 15/18
16/25 17/3 17/9
20/13 22/5 23/2
23/10
**probable-cause [1]**
13/6
**probably [1]** 20/19
**proceed [2]** 4/1
26/22
**proceeded [2]** 6/8
8/9
**proceedings [4]** 1/9
2/8 35/15 36/4
**process [1]** 27/6
**produced [2]** 2/8
22/12
**prolonged [1]** 14/15
**proof [1]** 22/3
**proposition [1]**
14/20
**provide [1]** 3/20
**prudent [1]** 15/15
**public [2]** 24/5
24/14
**pull [1]** 22/15
**pulled [3]** 7/25
10/13 16/8
**pulling [1]** 10/17
**purchased [1]** 18/18
**purposes [1]** 35/4
**pursuant [2]** 26/18
26/25
**put [4]** 8/5 10/6
10/9 34/17

**Q**

**quantity [14]** 9/4
9/7 10/4 11/17 11/19
18/22 19/8 20/2 20/8
20/20 21/7 22/12
23/12 26/12
**quantum [1]** 22/3
**question [1]** 12/23
**questioning [1]** 33/8
**questions [4]** 13/13
26/6 35/2 35/3
**quick [1]** 29/25
**quickly [2]** 13/1
28/8
**quite [1]** 25/10
**quotation [2]** 3/20
3/22
**quoting [2]** 12/4

10/1

**R**

**race [1]** 13/3
**racially [1]** 13/12
**radio [2]** 5/19 6/2
**radioed [1]** 5/8
**rain [1]** 10/7
**raise [2]** 18/8 18/13
**raised [1]** 10/2
**ran [1]** 6/24
**rather [1]** 21/8
**re [1]** 32/15
**re-evaluated [1]**
32/15
**read [2]** 3/15 3/17
**Realtime [1]** 2/4
**reason [8]** 11/4
12/17 14/3 19/1 24/1
24/11 24/23 29/18
**reasonable [11]** 15/8
15/13 15/15 15/19
16/21 19/4 19/25
20/7 20/18 22/22
23/12
**reasonableness [1]**
23/16
**reasonably [4]** 15/7
18/8 25/18 26/9
**reasoned [1]** 24/15
**reasons [1]** 26/17
**Recess [1]** 29/1
**recognizance [1]**
32/11
**record [9]** 3/4 3/16
3/18 3/19 24/16 32/5
33/4 35/4 36/3
**recorded [2]** 2/8
14/6
**recovered [1]** 4/23
**Registered [1]** 2/3
**regulations [1]**
33/15
**rejected [1]** 13/10
**related [1]** 30/10
**relates [1]** 27/20
**relating [1]** 24/16
**release [13]** 6/25
27/8 27/11 27/16
27/21 30/16 31/9
31/20 31/21 32/7
32/11 33/20 34/3
**released [7]** 30/25
32/12 32/15 32/23
33/23 33/25 34/4
**relevant [1]** 15/2
**relies [1]** 24/3
**remain [2]** 27/14
31/10
**remove [1]** 8/9
**removed [1]** 26/7
**report [4]** 32/13
33/7 34/14 34/24
**reporter [5]** 2/3 2/3
2/4 2/4 3/21

**reporting [1]** 32/25
**request [1]** 32/24
**requested [3]** 4/4
4/22 29/3
**requesting [1]** 26/24
**required [2]** 15/14
15/23
**resolve [1]** 31/1
**respects [1]** 25/21
**responded [7]** 7/4
7/8 7/15 7/23 8/1
21/17 25/11
**responds [1]** 6/1
**response [1]** 26/6
**result [1]** 25/4
**revealed [1]** 10/25
**review [2]** 18/4 21/3
**reviewed [2]** 4/5
4/25
**Rhode [1]** 1/19
**right [17]** 3/10 3/13
3/25 4/8 4/12 8/4
10/11 10/21 22/13
28/10 28/14 30/13
31/4 32/16 33/19
35/1 35/7
**rise [1]** 3/2
**RMR [2]** 36/2 36/8
**role [1]** 13/6
**rule [1]** 3/13
**rules [1]** 33/15
**ruling [4]** 1/10 3/16
4/13 26/21

**S**

**said [12]** 5/16 7/7
7/13 8/6 8/7 9/9
11/20 11/25 17/14
18/10 21/20 22/2
**sales [1]** 11/25
**same [3]** 24/8 27/14
31/21
**satchel [22]** 5/16
5/22 6/21 7/4 7/7
7/14 7/24 10/12
10/12 10/17 10/19
10/21 11/10 11/12
16/5 16/9 16/13 21/8
21/12 23/9 26/6 26/7
**satisfy [1]** 33/16
**saw [9]** 6/5 7/4
13/14 19/16 19/19
22/19 25/5 25/19
25/23
**say [9]** 3/17 3/19
8/25 20/21 21/23
22/1 30/14 32/10
33/24
**saying [5]** 5/21 7/10
10/8 10/13 29/21
**says [4]** 6/2 10/16
13/2 22/7
**scale [4]** 8/2 11/20
16/19 26/14
**scenario [1]** 17/15

**scene [3]** 6/17 18/23
24/17
**school [1]** 6/20
**script [2]** 3/21 3/23
**search [3]** 10/24
14/17 14/19
**searched [2]** 21/18
21/18
**searching [1]** 15/1
**second [3]** 13/13
14/18 15/1
**secondary [1]** 23/8
**seconds [3]** 6/2
10/14 10/22
**secrete [1]** 25/5
**section [1]** 27/1
**Sections [1]** 17/7
**secure [1]** 27/20
**security [1]** 13/17
**see [9]** 7/3 7/14
8/13 9/21 10/18
15/10 19/7 20/14
28/19
**seek [1]** 7/16
**seeking [1]** 14/20
**seemed [2]** 5/14 16/4
**seems [1]** 32/1
**seen [4]** 5/24 11/25
21/24 23/24
**sees [1]** 7/7
**seized [7]** 12/12
14/21 14/21 15/3
20/12 20/15 26/18
**seizing [1]** 17/24
**seizure [1]** 23/9
**sell [1]** 12/9
**sense [4]** 14/24
22/14 27/18 31/16
**separate [1]** 31/16
**Sergeant [2]** 7/3
7/10
**served [1]** 30/18
**service [3]** 24/6
24/14 24/20
**Services [4]** 2/2
29/9 33/8 34/14
**session [1]** 3/3
**several [3]** 9/4 13/1
22/13
**Shania [2]** 2/2 29/9
**shape [4]** 9/21 11/19
12/1 12/16
**shaped [1]** 11/8
**shares [1]** 13/4
**she [2]** 25/15 25/16
**should [3]** 8/24
14/14 30/14
**show [1]** 8/2
**shown [2]** 13/18
21/23
**shows [5]** 8/13 9/25
14/4 14/9 14/23
**side [4]** 7/2 7/6
8/19 9/22
**sidewalk [4]** 6/2

**S**

**sidewalk... [3]**  8/10 8/16 10/2
**sign [3]**  6/4 6/7 14/13
**simply [2]**  6/11 21/1
**simultaneously [2]** 10/16 10/19
**sir [1]**  34/25
**six [4]**  8/14 14/16 16/14 19/19
**size [3]**  11/19 12/1 20/8
**sizes [1]**  12/17
**slightly [1]**  23/24
**small [3]**  8/15 18/5 19/1
**smaller [1]**  25/7
**so [38]**
**so I think [2]**  27/7 27/8
**sold [2]**  20/2 24/9
**some [4]**  8/15 27/23 28/10 31/16
**somebody [1]**  32/8
**someone [1]**  10/6
**something [1]**  32/18
**sometime [1]**  28/9
**sometimes [3]**  12/5 17/17 23/18
**son [1]**  6/19
**sort [1]**  31/15
**sound [6]**  9/11 16/11 18/20 20/22 20/25 21/3
**Southeast [1]**  6/6
**space [2]**  24/5 24/15
**speak [1]**  26/25
**speedy [1]**  35/5
**spotted [1]**  5/4
**spread [3]**  9/12 9/13 16/11
**Squitieri [1]**  9/20
**standard [3]**  22/5 32/25 33/3
**start [1]**  17/5
**started [1]**  30/21
**startled [1]**  5/14
**state [1]**  33/3
**statements [3]**  14/6 26/11 26/19
**STATES [10]**  1/1 1/3 1/11 3/5 13/7 13/9 15/11 24/2 25/3 33/10
**station [3]**  11/2 13/16 20/12
**station-house [1]** 20/12
**stationed [1]**  13/25
**status [1]**  7/1
**stay [1]**  28/23
**Ste [1]**  1/14
**stenography [1]**  2/8
**step [1]**  34/6

**stepped [1]**  10/15
**stick [1]**  28/7
**still [3]**  31/6 31/10 34/22
**stop [10]**  6/9 6/13 7/11 10/16 13/3 13/4 13/11 14/15 14/16 21/8
**stopped [2]**  7/8 14/23
**street [7]**  1/14 5/5 6/6 11/25 14/1 18/11 18/11
**street-level [2]** 11/25 18/11
**strength [1]**  27/19
**stuffed [1]**  19/8
**stunned [1]**  16/4
**Subjective [1]**  13/5
**submitted [1]**  4/21
**substantial [4]** 15/24 16/22 17/10 22/4
**such [1]**  14/24
**sufficient [1]**  15/7
**suggest [2]**  19/8 25/13
**suggesting [1]**  25/15
**suggests [1]**  14/11
**sum [1]**  24/25
**Superior [2]**  27/7 30/3
**supervised [2]**  6/25 29/20
**Supervision [2]** 27/23 29/4
**supplemental [1]** 4/21
**support [1]**  21/21
**supported [1]**  20/10
**suppress [4]**  3/14 4/16 13/5 13/19
**suppressed [3]**  14/15 26/20 32/1
**suppression [2]** 12/25 23/11
**Supreme [1]**  13/9
**Supress [1]**  17/1
**sure [4]**  8/22 11/12 20/5 21/19
**surrender [1]**  33/6
**surrounded [1]**  8/13
**surrounding [2]**  6/17 22/20
**suspect [5]**  5/6 5/9 5/10 24/11 24/18
**suspected [3]**  16/12 22/25 23/6
**suspicion [6]**  10/3 15/12 18/8 18/13 20/24 26/15
**suspicious [2]**  6/11 10/5

**T**

**take [6]**  4/14 8/8

8/19 12/13 29/17 29/25
**taken [1]**  10/22
**takes [1]**  19/12
**taking [4]**  9/18 9/22 9/24 11/5
**talking [1]**  17/16
**tangible [1]**  26/18
**technical [1]**  19/22
**technicians [1]** 15/16
**terms [2]**  5/17 32/22
**test [2]**  30/5 30/5
**testified [24]**  5/13 6/5 6/12 9/18 10/18 11/7 11/11 11/15 12/14 12/21 17/12 18/12 18/14 18/25 19/16 19/18 21/7 23/2 23/5 23/17 24/24 25/5 25/8 25/22
**testify [1]**  21/11
**testimony [11]**  5/19 14/5 16/3 18/19 18/23 20/10 21/6 22/14 23/15 23/21 26/4
**than [25]**  4/9 9/10 12/18 15/10 15/12 15/13 15/14 16/9 16/23 17/11 17/12 19/2 19/10 19/17 19/20 21/9 21/13 21/20 22/2 22/4 22/15 23/4 23/23 23/24 24/14
**Thank [3]**  26/23 32/19 35/9
**Thank you [2]**  26/23 32/19
**that [192]**
**that'll [1]**  3/24
**that's [6]**  8/1 21/24 28/22 31/13 32/18 35/7
**THC [1]**  10/25
**their [6]**  10/6 18/20 19/2 19/6 26/6 34/8
**them [7]**  9/5 11/25 14/2 16/15 19/5 21/5 22/20
**then [26]**  3/23 4/13 6/8 6/22 7/1 7/13 7/24 7/25 8/7 10/10 10/12 10/21 20/3 22/1 26/7 28/8 28/24 30/9 30/23 31/1 31/10 31/22 32/18 32/25 34/15 34/23
**theory [2]**  31/16 31/24
**there [16]**  8/1 9/20 11/10 13/24 15/8 16/22 17/3 17/10

20/17 21/21 21/24 22/17 24/3 24/10 25/18 28/2
**there's [2]**  31/3 32/17
**therefore [1]**  22/22
**these [4]**  16/20 21/4 28/9 31/1
**they [24]**  4/4 9/11 9/12 9/13 9/14 10/21 10/23 11/2 12/18 12/19 15/6 16/10 16/11 18/1 18/1 19/8 19/10 20/23 22/21 23/5 30/6 31/22 34/7 34/15
**they're [2]**  18/10 34/19
**thing [2]**  3/20 4/3
**things [4]**  8/24 31/14 32/2 34/13
**think [12]**  4/5 27/7 27/8 27/16 27/17 27/18 27/21 28/13 28/14 30/13 35/7 35/7
**thinks [1]**  7/7
**Third [1]**  14/14
**this [30]**  3/2 3/17 4/14 6/12 6/15 6/21 7/9 8/3 8/18 8/21 10/2 13/19 16/17 18/15 21/3 22/19 24/1 25/17 25/21 26/22 26/24 29/18 30/4 30/9 30/21 31/24 32/7 34/18 34/19 35/6
**those [9]**  19/5 21/25 22/22 30/6 32/25 33/4 33/19 33/21 33/24
**though [5]**  12/14 16/16 18/10 23/23 30/16
**three [9]**  6/16 12/3 16/8 17/13 17/16 19/20 23/17 23/23 25/7
**threshold [2]**  9/15 12/16
**through [2]**  14/18 28/10
**thrown [1]**  22/12
**thus [3]**  17/8 24/14 26/15
**time [17]**  6/12 6/15 8/15 9/1 11/11 13/21 14/16 15/20 16/3 16/17 21/11 28/16 30/20 31/21 31/24 34/15 35/6
**time's [1]**  35/8
**times [1]**  19/20
**timing [1]**  28/6

**T**

Timothy [2]   4/18 5/3
Timothy Ahl [2]   4/18 5/3
titled [1]   36/4
today [1]   34/9
told [5]   5/9 6/19 8/8 26/5 30/22
tolled [1]   35/8
tolls [1]   35/5
too [2]   13/23 28/10
took [2]   8/21 8/25
top [4]   8/10 10/1 22/9 26/8
total [1]   20/15
totality [2]   15/22 16/20
touch [2]   30/17 32/8
toward [3]   8/17 9/25 18/21
traffic [3]   13/11 14/9 14/11
training [1]   11/16
transcript [4]   1/9 2/8 3/21 36/3
transcription [1]   2/8
travel [1]   33/9
traveling [1]   33/9
trees [3]   13/24 14/1 14/4
trial [2]   28/13 35/5
tried [1]   25/13
trustworthy [1]   15/7
trying [3]   10/3 25/5 26/12
turned [2]   9/24 24/6
twice [1]   19/17
two [8]   4/17 12/3 16/7 17/13 17/15 23/17 29/15 31/13
type [4]   11/19 12/23 17/15 18/12
types [1]   18/7
typical [4]   12/3 17/16 23/17 23/22
typically [4]   12/23 17/15 18/14 18/17

**U**

U.S [6]   13/8 15/11 15/17 15/21 15/23 16/1
U.S. [1]   13/9
U.S. Supreme [1]   13/9
U.S.C [1]   26/25
ultimately [3]   15/23 33/22 34/10
unable [1]   30/23
uncertain [1]   21/20
uncontroverted [1]   17/5
under [8]   9/8 11/6 11/13 17/6 21/16

23/13 27/16 33/1
undergo [1]   27/6
underlying [1]   29/18
undermines [1]   23/15
understanding [1]   21/16
Understood [2]   28/3 32/19
undisputed [1]   4/6
unduly [1]   14/15
UNITED [10]   1/1 1/3 1/11 3/5 13/7 13/9 15/11 24/2 25/3 33/10
United States [2]   24/2 33/10
unlawful [2]   11/14 17/4
unless [1]   32/2
unlike [2]   26/2 26/11
unnatural [1]   5/15
until [3]   28/23 33/3 34/20
unusual [2]   10/6 20/25
up [11]   6/19 8/6 9/2 17/6 17/25 22/1 29/3 29/6 31/20 34/1 34/22
upon [1]   14/22
urges [1]   12/25
us [1]   35/12
USAO [1]   1/13
usdoj.gov [1]   1/16
use [13]   9/17 11/17 11/21 12/3 12/6 16/6 17/15 17/18 18/10 23/18 23/19 23/25 33/2
used [5]   5/17 11/23 11/25 18/10 18/11
using [1]   8/20

**V**

varies [1]   17/14
variety [1]   13/1
various [4]   4/19 6/24 11/18 12/25
vary [1]   11/21
verdict [1]   29/5
verify [1]   33/11
versus [4]   3/5 11/17 24/2 25/3
very [1]   35/9
view [2]   4/22 13/20
viewed [2]   22/10 22/23
violation [3]   29/11 29/21 30/2
violations [1]   30/6
voluntarily [1]   26/7
volunteered [1]   26/14
vs [1]   1/5

**W**

walk [3]   6/7 14/11 14/12
Walk' [1]   6/4
walked [1]   8/18
walking [2]   6/1 6/11
want [4]   8/22 25/16 32/22 35/4
wanted [1]   8/21
warrant [19]   29/11 29/12 29/17 30/6 30/17 30/18 31/3 31/6 31/9 31/15 31/18 31/20 31/22 32/8 32/17 33/16 34/5 34/8 35/13
warranted [3]   17/21 23/11 24/25
warrants [2]   29/15 31/1
was [86]
Washington [4]   1/5 1/15 1/20 2/6
wasn't [2]   11/12 21/19
watched [1]   22/21
wax [1]   10/25
way [2]   9/12 9/13
we [18]   3/4 3/25 12/6 17/18 18/16 18/16 23/19 28/1 28/2 28/7 28/10 28/19 29/10 30/16 32/18 32/24 34/18 34/20
we have [1]   18/16
we'd [2]   27/8 30/25
we'll [2]   32/25 34/23
we're [6]   7/11 17/16 28/14 30/13 31/1 33/3
weapon [1]   23/3
weapons [1]   33/11
wearing [2]   5/10 5/11
weed [5]   7/23 9/20 16/19 26/6 26/14
weighed [1]   11/1
weight [11]   12/11 12/18 18/24 19/13 19/16 19/19 19/23 20/1 20/12 20/15 20/16
well [5]   13/15 25/8 25/23 33/2 33/25
went [2]   6/22 8/12
were [13]   4/5 8/22 9/15 11/1 13/24 15/7 19/4 19/7 19/8 23/24 24/9 30/6 31/25
Wesby [2]   15/23 16/1
west [2]   6/6 14/11
wet [2]   8/7 10/7
what [21]   9/4 10/11

10/12 15/23 16/2 17/5 18/23 19/17 19/20 23/22 23/24 25/13 27/22 27/25 28/1 28/16 28/19 31/8 32/10 33/4 34/20
what's [3]   29/5 34/2 34/9
Whatever [1]   21/3
when [11]   9/21 11/20 12/12 15/3 16/10 18/15 19/9 20/23 21/16 21/23 25/14
where [8]   3/22 4/25 6/23 8/12 13/10 13/25 18/16 24/8
whereas [2]   5/11 25/24
whether [15]   5/24 7/3 7/22 8/5 11/12 13/13 15/5 21/15 21/21 24/21 27/1 27/22 33/7 34/8 34/16
which [25]   5/15 5/16 5/20 6/15 9/16 10/6 11/22 13/11 14/2 14/3 14/9 15/5 15/6 15/15 16/24 18/16 22/5 24/3 24/18 25/8 25/12 30/4 32/13 32/16 34/15
while [3]   6/11 27/8 27/11
who [4]   7/2 10/10 25/10 30/18
Whren [2]   13/7 13/9
why [2]   14/23 29/6
will [19]   3/22 4/14 26/17 26/19 28/5 29/10 31/12 32/14 33/19 33/21 33/24 34/3 34/4 34/4 34/5 34/6 34/7 34/15 34/16
William [3]   2/3 36/2 36/8
Williams [2]   7/3 7/10
window [2]   7/2 7/6
wish [1]   26/22
wishes [1]   27/1
within [4]   15/5 16/2 32/13 34/14
without [1]   20/16
witness [2]   5/4 21/19
witnessed [2]   22/15 22/19
witnesses [2]   4/18 4/20
won't [1]   3/19
words [4]   9/10 16/8 17/20 25/25

**W**

**worked [1]**   28/10
**worn [1]**   8/13
**would [33]**   9/8 9/15
 11/10 12/7 12/13
 14/24 14/24 16/21
 17/18 18/1 18/13
 19/5 19/8 19/14
 19/17 19/19 19/25
 20/8 20/9 20/18
 20/19 22/22 23/19
 24/18 24/18 24/20
 26/24 29/25 30/16
 32/6 32/10 32/24
 33/6
**write [1]**   9/2

**Y**

**Yeah [3]**   4/10 7/15
 28/25
**Yes [5]**   30/11 31/5
 33/5 34/25 35/14
**yet [2]**   25/1 31/4
**you [35]**   3/12 3/19
 7/11 7/14 8/1 8/2
 8/6 8/6 26/23 28/5
 28/16 29/6 29/17
 29/21 29/25 31/23
 31/25 32/7 32/19
 33/3 33/21 33/22
 33/22 33/25 34/3
 34/8 34/12 34/13
 34/16 34/16 34/16
 34/17 35/9 35/10
 35/12
**you can [1]**   34/17
**you have [1]**   34/13
**you know [3]**   3/19
 31/23 34/16
**you'll [2]**   3/15
 34/23
**you're [5]**   28/16
 31/8 34/9 34/22
 34/23
**your [19]**   3/4 4/2
 4/3 4/4 10/9 26/23
 27/5 28/12 29/8
 30/14 30/15 30/16
 30/25 31/5 31/19
 32/6 32/20 33/12
 34/21
**Your Honor [14]**   3/4
 4/2 4/3 4/4 26/23
 27/5 28/12 29/8
 30/15 30/16 30/25
 31/5 32/6 32/20

**Z**

**Zaremba [3]**   2/3 36/2
 36/8